ORIGINAL

1  KIRK B. LENHARD
   Nevada Bar # 1437
2  PHILIP M. BALLIF
   Nevada Bar # 2650                         
3  TAMARA BEATTY PETERSON
   Nevada Bar # 5218
4  JONES VARGAS                              CV-S-05-1112-RCJ-RJJ
   3773 Howard Hughes Parkway
5  Third Floor South
   Las Vegas, Nevada 89109
6  Telephone: (702) 862-3300
   Facsimile:  (702) 737-7705
7  ATTORNEYS FOR PLAINTIFF SHUFFLE MASTER, INC.

8

9                       UNITED STATES DISTRICT COURT

10                            DISTRICT OF NEVADA

11
   SHUFFLE MASTER, INC.                      CASE NO. _____
12
                    Plaintiff,               **COMPLAINT FOR INJUNCTIVE**
13  vs.                                      **RELIEF AND DAMAGES**

14  YEHIA AWADA, and GAMING
    ENTERTAINMENT, INC.
15
                    Defendants.
16

17

18      Plaintiff, SHUFFLE MASTER, INC., a Minnesota corporation ("Shuffle

19  Master"), by and through its attorney of record, the law firm of Jones Vargas, for its

20  claims against the Defendants, alleges as follows:

21                          **JURISDICTION AND VENUE**

22      1.  Shuffle Master files this action against defendants for trade dress

23  infringement under the Lanham Act (15 U.S.C. §1051 et seq.), and for related claims of

24  unfair competition, interference with prospective economic advantage, conversion and

25  injunctive relief under the common law of the State of Nevada. This Court has subject

26

27
                            Page 1 of 13
28

matter jurisdiction over the federal trade dress claim under 28 U.S.C. §§1331 and 1338(a), and over the remaining claims under 28 U.S.C. §§1338(b) and 1367(a).

2. Shuffle Master alleges upon information and belief that defendant Gaming Entertainment, Inc. ("GEI") is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 4054 S. Industrial Road, Las Vegas, Nevada, and that GEI has committed a substantial part of the acts complained of within this judicial district.

3. Shuffle Master alleges upon information and belief that defendant Yehia Awada ("Awada") is the President, Secretary and Treasurer of GEI, and that Awada has committed a substantial part of the acts complained of within this judicial district.

4. Venue is proper in this district, unofficial southern division, under 28 U.S.C. §1391(b) and (c).

## PARTIES

5. Shuffle Master is a Minnesota corporation with its principal place of business at 1106 Palms Airport Drive, Las Vegas, Nevada.

6. Shuffle Master alleges upon information and belief that defendant GEI is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 4054 S. Industrial Road, Las Vegas, Nevada.

7. Shuffle Master alleges upon information and belief that defendant Awada is a citizen of Nevada, domiciled at 3982 Round Wood Street, Las Vegas, Nevada 89117. Shuffle Master further alleges upon information and belief that Awada operates GEI as an alter ego of himself, and that he exercises such complete influence over the policy and business practices of GEI and has such unity of interest and ownership with GEI that GEI is inseparable from Awada and has no existence separate and apart from Awada and that adherence to GEI as a separate entity from Awada would sanction a fraud or promote

injustice.

## COMMON ALLEGATIONS

8.  Shuffle Master is a company that is engaged in the business of manufacturing and distributing high-quality, innovative table games to its clients and customers. Shuffle Master distributes its games throughout the United States, including in this judicial district.

9.  Shuffle Master is the owner of a table game entitled Four Card Poker. Four Card Poker was developed by Shuffle Master, and the game debuted in the marketplace in late January 2002, in California, at the Jackson Rancheria casino. Shuffle Master has expended considerable resources in developing, marketing, manufacturing, advertising and distributing the Four Card Poker table game. Four Card Poker is the fourth-highest revenue-producing table game in the marketplace, and has approximately 220 placements of the game in casinos around the United States and abroad.

10. Four Card Poker is played by dealing five cards to a player. The player plays a hand against the dealer and makes an "Ante" bet, and the player has the option to make a side bet known as "Aces Up." The cards are then dealt to the player. Once the player obtains his cards, the player may add a second bet in an amount one to three times the "Ante" bet. The object is to make the best four-card hand out of five cards. The game play rules and the side bet for Four Card Poker have remained the same since the inception of the game.

11. Four Card Poker is played upon a standard table in which the dealer stands behind the semi-circle table, and the players line up along the circumference of the semi-circle table. Four Card Poker has a felt overlay placed upon the table. The felt overlay has a table design with inherently distinctive and unique visual components for the game, whereby said components are nonfunctional for the game. The distinctive and unique

appearance of the table design results from a combination of individual features, including (1) the placement of three circles, arranged vertically, representing the location to place the various bets, at each of the player's stations; (2) the font within the three circles at each of the player's stations; (3) the printing of the names of the bets within the three circles, so that the letters of the names touch the outer edges of the circles, at each of the player's stations; (4) the wording for the names of the bets, including "Aces Up", "Ante", and "Play 1x to 3x Ante", at each of the player's stations; (5) the placement of the pay tables at each player station; (6) the font of the "Aces Up" heading for the pay table at each player station; (7) the number of dots (18) below the "Aces Up" heading for the pay table at each player station; (8) the font of the "Automatic Bonus" heading for the pay table at each player station; (9) the number of dots (18) below the "Automatic Bonus" heading for the pay table at each player station; and (10) the font and wording of the text below the pay table at each player station ("Automatic Bonuses paid on Ante wager").

12. Shuffle Master has continuously used the current overall appearance for the table layout of Four Card Poker in connection with the promotion, advertising, marketing, and sale of those table games since well before the acts of defendants complained of herein.

13. Shuffle Master alleges upon information and belief that Awada and his company, GEI, have owned or distributed a game entitled Play Four Poker (the "Original Awada Game"). Shuffle Master further alleges upon information and belief that sometime subsequent to the debut of Four Card Poker, the Original Awada Game debuted at a casino in Indiana. The game play rules for this original version of the Original Awada Game were completely different than the game play rules for the Shuffle Master game Four Card Poker. In addition, the Original Awada Game had a side bet that played

differently than the side bet for Four Card Poker, and the Original Awada Game used a different look and font on its table layout design, including for the side bet.

14. Shuffle Master alleges upon information and belief that approximately one month ago, in early August 2005, Awada and his company, GEI, changed the basic game play rules of the Awada Game (the "Revised Awada Game"). The new rules of the game are now identical to Four Card Poker. Further, the layout for the Revised Awada Game is virtually identical to Four Card Poker.

15. Shuffle Master alleges upon information and belief that Awada and his company, GEI, and/or agents of GEI, in early August 2005, were claiming that Shuffle Master was violating the patent for the Revised Awada Game. Shuffle Master further alleges upon information and belief, that this claim was false, since neither the Revised Awada Game or any version of the Awada Game has any patent issued for it.

16. Shuffle Master alleges upon information and belief that Awada and his company, GEI, and/or agents of GEI, in early August 2005, claimed that Shuffle Master stole the concept for the Revised Awada Game and used the concept in Shuffle Master's Four Card Poker game. This claim is false as Shuffle Master did not misappropriate the game concept from Awada and his company, GEI.

17. On September 13, 2005, the Las Vegas Convention Center will host "G2E", the largest United States gaming show for casino equipment manufacturers and suppliers. At the gaming show, casino equipment manufacturers, suppliers, and gaming companies will present their products to representatives from casinos from all over the United States.

18. On September 11, 2005, those companies and individuals who have booths at the gaming show for the purpose of marketing and selling their games may set up their booths in preparation for the opening of the gaming show.

19. On or about September 11, 2005, Awada and his company, GEI, had the GEI booth set up for display of the games marketed and distributed by GEI. The Revised Awada Game was set up for display, and had a table layout design that is virtually identical to the game Four Card Poker. Specifically, the nonfunctional components which were identical to the Four Card Poker table layout design included: (1) the placement of three circles, arranged vertically, representing the location to place the various bets, at each of the player's stations; (2) the font within the three circles at each of the player's stations; (3) the printing of the names of the bets within the three circles, so that the letters of the names touch the outer edges of the circles, at each of the player's stations; (4) the wording for the names of the bets, including "Aces Up", " Ante", and "Play 1x to 3x Ante", at each of the player's stations; (5) the placement of the pay tables at each player station; (6) the font of the "Aces Up" heading for the pay table at each player station; (7) the number of dots (18) below the "Aces Up" heading for the pay table at each player station; (8) the font of the "Automatic Bonus" heading for the pay table at each player station; (9) the number of dots (18) below the "Automatic Bonus" heading for the pay table at each player station; and (10) the font and wording of the text below the pay table at each player station ("Automatic Bonuses paid on Ante wager").

20. The overall appearance of the table layout design for the Revised Awada Game is very similar to the overall appearance of the table layout design for Four Card Poker, and is likely to confuse consumers as to the affiliation, connection or association of defendants with Shuffle Master, as to the game Four Card Poker.

21. Defendants are offering for sale and selling the Revised Awada Game and are causing these games to enter into interstate commerce with the intent to benefit from Shuffle Master's goodwill and reputation in the table games market, to deceive the public as to the origin of defendants' table game, and to profit from the demand created by

Shuffle Master for its table game Four Card Poker.

22. The presence of the Revised Awada Game in the marketplace and/or at the gaming show G2E are likely to cause confusion, or to cause mistake, or to deceive as to the origin of the Revised Awada Game, with the intent to benefit from Shuffle Master's reputation and goodwill in the table games market, and to profit from the demand created by Shuffle Master for its Four Card Poker game.

23. The presence of the Revised Awada Game in the marketplace damages the value of Shuffle Master's rights to its game Four Card Poker and in its trade dress for the overall appearance of the Four Card Poker game.

## FIRST CLAIM FOR RELIEF
### (Trade Dress Infringement)

24. Shuffle Master re-alleges and incorporates the allegations contained in paragraphs 1 through 23 as if fully set forth herein.

25. By reason of defendants' acts complained of herein concerning the Revised Awada Game, defendants have intentionally engaged in conduct that constitutes a false designation of origin, a false or misleading description of fact, a false or misleading representation of fact tending wrongfully and falsely to describe or represent a connection between Four Card Poker and defendants' goods, and an infringement of Shuffle Master's trade dress rights in violation of 15 U.S.C. §1125(a). Shuffle Master believes that customers are likely to be confused by defendants' use of such false designations of origin, false descriptions or representations regarding Shuffle Master's and defendants' goods, and confusingly similar trade dress.

26. Defendants' trade dress infringement, coupled with its misrepresentations regarding Shuffle Master's game Four Card Poker, is likely to confuse table game purchasers into thinking that Shuffle Master copied the Revised Awada Game, or that the

Revised Awada Game is the same game as Four Card Poker.

27. Because of defendants' conduct, Shuffle Master has been irreparably harmed in its business. Moreover, Shuffle Master will continue to suffer irreparable harm unless defendants are restrained from infringing Shuffle Master's trade dress and making false designations of origin, false descriptions, or misrepresentations regarding Shuffle Master's and defendants' goods.

28. Shuffle Master is entitled to a temporary restraining order, and preliminary and permanent injunctive relief against defendant to mitigate the irreparable harm that has been caused and continues to be caused by defendants' actions. Shuffle Master is further entitled to monetary damages in an amount to be determined at trial.

29. Shuffle Master has been forced to retain an attorney to prosecute this action, and is entitled to its attorney fees and costs.

### SECOND CLAIM FOR RELIEF
### (Common Law Unfair Competition)

30. Shuffle Master re-alleges and incorporates the allegations contained in paragraphs 1 through 29 as if fully set forth herein.

31. By reason of defendants' acts complained of herein, defendants have unfairly competed with Shuffle Master in violation of the common law of the State of Nevada.

32. Shuffle Master alleges upon information and belief that defendants' acts have been done knowingly, maliciously, and oppressively, and with an intent to trade upon the goodwill of Shuffle Master and to injure Shuffle Master.

33. Because of this unfair competition, Shuffle Master has been irreparably harmed in its business. Moreover, Shuffle Master will continue to suffer irreparable harm unless and until defendants are restrained from unfairly competing with Shuffle Master.

34. Shuffle Master is entitled to a temporary restraining order, and preliminary and permanent injunctive relief against defendant to mitigate the irreparable harm that has been caused and continues to be caused by defendants' actions. Shuffle Master is further entitled to monetary damages in an amount to be determined at trial.

35. Shuffle Master has been forced to retain an attorney to prosecute this action, and is entitled to its attorney fees and costs.

### THIRD CLAIM FOR RELIEF
### (Interference with Prospective Business Advantage)

36. Shuffle Master re-alleges and incorporates the allegations contained in paragraphs 1 through 35 as if fully set forth herein.

37. Shuffle Master has a valid and legally protectable interest in the business relationship between it and its customers utilizing Shuffle Master's games.

38. Shuffle Master has prospective contractual relationships between it and the entities, individuals, and/or representatives attending the G2E gaming show in Las Vegas. Defendants have actual knowledge of the prospective contractual relationships between Shuffle Master and the entities, individuals and/or representatives attending the G2E gaming show in Las Vegas.

39. Defendants have engaged in acts alleged herein, whereby such acts were intended and/or designed to disrupt and/or prevent business and/or contractual relationships between Shuffle Master and its clients.

40. Defendants willfully and intentionally interfered with and/or disrupted Shuffle Master's business and/or contractual relationships with its clients without license, justification, or privilege.

41. Defendants acts were oppressive and malicious and were done for the purpose of damaging Shuffle Master's business. Shuffle Master is entitled to an award of

punitive damages in an amount determined by the court to be reasonable under the circumstances of the case.

42. Shuffle Master has been injured by Defendants' intentional and unjustified interference with its business and/or contractual relationship with its clients and Shuffle Master is entitled to injunctive relief, as well as monetary relief.

43. Shuffle Master is entitled to a temporary restraining order, and preliminary and permanent injunctive relief against defendant to mitigate the irreparable harm that has been caused and continues to be caused by defendants' actions. Shuffle Master is further entitled to monetary damages in an amount to be determined at trial.

44. Shuffle Master has been forced to retain an attorney to prosecute this action, and is entitled to its attorney fees and costs.

## FOURTH CLAIM FOR RELIEF
### (Conversion)

45. Shuffle Master re-alleges and incorporates the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46. Shuffle Master was at all relevant times, and still is, the owner of the table game Four Card Poker, and was, and still is, entitled to its possession.

47. On or about August 1, 2005, and continuing to the present, defendants wrongfully acquired, or unlawfully took property belonging to Shuffle Master and converted it to defendants' own use.

48. Shuffle Master has been injured by defendants' conversion of Shuffle Master's property and is entitled to injunctive relief, as well as monetary relief.

49. Shuffle Master is entitled to a temporary restraining order, and preliminary and permanent injunctive relief against defendant to mitigate the irreparable harm that has been caused and continues to be caused by defendants' actions. Shuffle Master is further

1  entitled to monetary damages in an amount to be determined at trial.

2  50.  Shuffle Master has been forced to retain an attorney to prosecute this
3  action, and is entitled to its attorney fees and costs.

### FIFTH CLAIM FOR RELIEF
### (Injunctive Relief)

51.  Shuffle Master re-alleges and incorporates the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52.  Shuffle Master is entitled to a temporary restraining order, and preliminary and permanent injunctive relief against defendants to mitigate the irreparable harm that has been caused and continues to be caused by defendants' actions.

53.  Shuffle Master is entitled to a temporary restraining order, and preliminary and permanent injunctive relief against defendant to mitigate the irreparable harm that has been caused and continues to be caused by defendants' actions. Shuffle Master is further entitled to monetary damages in an amount to be determined at trial.

54.  Shuffle Master has been forced to retain an attorney to prosecute this action, and is entitled to its attorney fees and costs.

WHEREFORE, Shuffle Master prays for judgment against defendants as follows:

A.  That defendants, and all of their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of the injunction, be temporarily, preliminarily and permanent enjoined from:

(1) advertising, promoting, marketing, offering for sale, selling or otherwise disposing of the Revised Awada Game;

(2) using a trade dress confusingly similar to Shuffle Master's trade dress in the overall appearance of its Four Card Poker game in connection with the

advertising, promotion, marketing, sale, or other disposal of defendants' products, or making any statements, descriptions or representations that defendants' Revised Awada Game is the same game as Shuffle Master's Four Card Poker game;

   (3) otherwise deceptively or unfairly competing with Shuffle Master in the sale of table games;

  B. That Shuffle Master be awarded damages in an amount to be determined at trial;

  C. That Shuffle Master be awarded, in an amount to be determined at trial, under 15 U.S.C. §1117(a) the total profits received by defendants from, and any damages sustained by Shuffle Master as a result of, defendants' sales of the Revised Awada Game and any other products infringing Shuffle Master's trade dress in the overall appearance of its game Four Card Poker;

  D. That Shuffle Master be awarded under 15 U.S.C. §1117(a) enhanced damages, up to three times the amount found as actual damages for defendants' trade dress and trademark infringement and false representations in an amount to be determined at trial;

  E. That Shuffle Master be awarded punitive damages for defendants' knowing, malicious, and oppressive acts;

  F. That defendants be ordered to deliver to Shuffle Master for destruction all labels, signs, prints, packages, wrappers, receptacles, advertising materials, table game layouts, or products that bear trade dress confusingly similar to Shuffle Master's Four Card Poker game or that result in any unfair competition to Shuffle Master;

  G. That defendants be ordered to make a written report, within a reasonable period of time, to be filed with the Court, detailing the manner of its compliance with the requested injunctive and mandatory relief above;

  H. That Shuffle Master be awarded its reasonable attorney fees and costs of suits

1 under 15 U.S.C. §1117(a) and 35 U.S.C. §285; and

2     I.  That Shuffle Master be awarded such other relief as the Court may deem just and proper.

DATED: September __, 2005.

JONES VARGAS

By: _____
KIRK B. LENHARD, ESQ.
Nevada Bar # 1437
PHILIP M. BALLIF, ESQ.
Nevada Bar # 2650
TAMARA BEATTY PETERSON, ESQ.
Nevada Bar # 5218
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89109
ATTORNEYS FOR PLAINTIFF