KIRK B. LENHARD
Nevada Bar No. 1437
TAMARA BEATTY PETERSON
Nevada Bar No. 5218
JONES VARGAS
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89109
Telephone: 702/862-3300
Facsimile: 702/737-7705

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| SHUFFLE MASTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> YEHIA AWADA and GAMING ENTERTAINMENT, INC., <br><br> Defendants. | CASE NO. CV-S-05-1112-RCJ-RJJ <br><br> **FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |

### FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, SHUFFLE MASTER GAMING, INC., a Minnesota corporation ("Shuffle Master"), by and through its attorneys of record for its claims against the Defendants, alleges as follows:

### JURISDICTION

1. Shuffle Master files this action against Defendants for trade dress infringement and trademark infringement of an unregistered trademark under the Lanham Act (15 U.S.C. § 1051, *et seq.*). This Court has subject matter jurisdiction over the federal trade dress and trademark claims under 28 U.S.C. §§ 1331 and 1338 (a).

## PARTIES

2. Shuffle Master is a Minnesota corporation with its principal place of business at 1106 Palms Airport Drive, Las Vegas, Nevada.

3. Shuffle Master alleges upon information and belief that Defendant GEI is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 4054 South Industrial Road, Las Vegas, Nevada.

4. Shuffle Master alleges upon information and belief that Defendant Awada is a citizen of Nevada, domiciled at 3982 Round Wood Street, Las Vegas, Nevada 89117. Shuffle Master further alleges upon information and belief that Awada operates GEI as an alter ego of himself, and that he exercises such complete influence over the policy and business practices of GEI and has such unity of interest and ownership with GEI and GEI is inseparable from Awada and has no existence separate and apart from Awada and that adherence to GEI as a separate entity from Awada would sanction a fraud or promote injustice.

## VENUE

5. Venue is proper in this district, unofficial southern division, under 28 U.S.C. § 1391(b) and (c).

## COMMON ALLEGATIONS

6. Shuffle Master is a company that is engaged in the business of manufacturing and distributing high-quality, innovative table games to its clients and customers. Shuffle Master distributes its games throughout the United States, including in this judicial district.

7. Shuffle Master is the owner of a table game entitled Four Card Poker. Four Card Poker was developed by Shuffle Master, and the game debuted in the marketplace in late January 2002, in California, at the Jackson Rancheria Casino.

8. The object of Four Card Poker is to make the best four-card hand out of five cards. Four Card Poker begins with the dealer dealing five cards to a player. The player plays a hand against the dealer and makes an "Ante" bet, and the player has the option to make a side bet. Shuffle Master coined and uses the phrase "Aces Up" to use in connection with its game and the side bet. After the "ante" bet and/or the "Aces Up" side bet are made, the cards are then dealt to the player. Once the

2

player obtains his cards, the player must add a second bet in an amount one to three times the "Ante" bet to continue to play against the dealer. The game play rules and the side bet for Four Card Poker have remained the same since the inception of the game.

9. Four Card Poker is played upon a standard table in which the dealer stands behind the semi-circle table, and the players line up along the circumference of the semi-circle table. Shuffle Master is the exclusive owner of the trade dress rights in the non-functional overall design of the felt overlay that sits atop a Four Card Poker table (the "Shuffle Master Trade Dress").

10. The Shuffle Master Trade Dress consists of a felt overlay design with inherently distinctive and unique visual components, whereby said components are nonfunctional for the game. The distinctive and unique appearance of the felt overlay design results from the combination of individual features, including: (1) the placement of three circles, arranged vertically, representing the location to place the various bets, at each player station; (2) the font within the three circles at each player station; (3) the printing of the names of the bets within the three circles at each player station, so that the letters of "Aces Up" and "Play 1x to 3x Ante" touch the outer edges of the circles; (4) the identification of the bets, as "Aces Up", " Ante", and "Play 1x to 3x Ante" at each player station; (5) the placement of the pay tables at each player station beneath the vertically arranged circles; (6) the font of "Aces Up" at each player station; (7) the number of dots (eighteen) below "Aces Up" at each player station; (8) the font of "Automatic Bonus" at each player station; (9) the number of dots (eighteen) below "Automatic Bonus" at each player station; and (10) the font and wording of the text below the pay table at each player station ("Automatic Bonuses paid on Ante wager").

11. The appearance of the Shuffle Master Trade Dress is not a function of the rules of play for Four Card Poker and any number of different designs could be used on the felt overlay for that game.

12. Shuffle Master has continuously used the Shuffle Master Trade Dress and the Aces Up trademark in connection with the promotion, advertising, marketing, and sale of its Four Card Poker table games since well before the conduct of Defendants complained of herein. Shuffle Master has expended considerable resources in developing, marketing, manufacturing, advertising and distributing its Four Card Poker table game. Four Card Poker is the fourth-highest revenue-producing table game

3

in the marketplace, and has approximately 220 placements of the game in casinos around the United States and abroad.

13. As a result of Shuffle Master's continuous use of the Shuffle Master Trade Dress and Aces Up trademark, Shuffle Master's promotion of the Shuffle Master Trade Dress and Aces Up trademark, and the presence of Shuffle Master's Four Card Poker table games bearing the Shuffle Master Trade Dress and the Aces Up trademark in gaming establishments across the country, owners and operators of gaming establishments, as well as the patrons of gaming establishments, have come to know and recognize the distinctive Shuffle Master Trade Dress and the Aces Up trademark as emanating from a single source, Shuffle Master.

14. Shuffle Master alleges upon information and belief that Awada and his company, GEI, have owned or distributed a game entitled Play Four Poker (the "Original Awada Game"). Shuffle Master further alleges upon information and belief that sometime subsequent to the debut of Four Card Poker, the Original Awada Game debuted at a casino in Indiana. The game play rules for this original version of the Original Awada Game were different than the game play rules for the Shuffle Master game Four Card Poker. In addition, the felt overlay of the Original Awada Game differed in appearance from the Shuffle Master Trade Dress and did not include Shuffle Master's Aces Up trademark.

15. Shuffle Master alleges upon information and belief that approximately three months ago, in early August 2005, Awada and his company, GEI, changed the basic game play rules of the Awada Game (the "Revised Awada Game"). The new rules of the game are now identical to Four Card Poker. Further, the felt overlay for the Revised Awada Game is virtually identical to the Shuffle Master Trade Dress and now includes Shuffle Master's Aces Up trademark.

16. On September 13, 2005, the Las Vegas Convention Center hosted the annual "G2E," the largest United States gaming show for casino equipment manufacturers and suppliers. At the gaming show, casino equipment manufacturers, suppliers and gaming companies presented their products to casino representatives from all over the United States.

///

4

17. On September 11, 2005, those companies and individuals who had booths at the gaming show for the purpose of marketing and selling their games were permitted to set up their booths in preparation for the opening of the gaming show.

18. On or about September 11, 2005, Awada and his company, GEI, had the GEI booth set up for display of the games marketed and distributed by GEI. The Revised Awada Game was set up for display, and had a felt overlay design that is virtually identical to the Shuffle Master Trade Dress. Specifically, the nonfunctional components which were identical to the Shuffle Master Trade Dress included: (1) the placement of three circles, arranged vertically, representing the location to place the various bets, at each player station; (2) the font within the three circles at each player station; (3) the printing of the names of the bets within the three circles at each player station, so that the letters of "Aces Up" and "Play 1x to 3x Ante" touch the outer edges of the circles; (4) the identification of the bets, as "Aces Up", " Ante", and "Play 1x to 3x Ante" at each player station; (5) the placement of the pay tables at each player station beneath the vertically arranged circles; (6) the font of "Aces Up" at each player station; (7) the number of dots (eighteen) below "Aces Up" at each player station; (8) the font of "Automatic Bonus" at each player station; (9) the number of dots (eighteen) below "Automatic Bonus" at each player station; and (10) the font and wording of the text below the pay table at each player station ("Automatic Bonuses paid on Ante wager").

19. The overall appearance of the table layout design for the Revised Awada Game is virtually identical to the Shuffle Master Trade Dress, and is likely to confuse consumers as to the affiliation, connection or association of Defendants with Shuffle Master, as to the game Four Card Poker.

20. Defendants have offered for sale and sold the Revised Awada Game and have caused these games to enter into interstate commerce with the intent to benefit from Shuffle Master's goodwill and reputation in the table games market, to deceive the public as to the origin of Defendants' table game, and to profit from the demand created by Shuffle Master for its table game Four Card Poker.

21. Shuffle Master is involved in interstate business and the Defendants' actions alleged herein have affected or will affect that business.

///

5

22. On information and belief, Defendants' Revised Awada Game has been and will be advertised and promoted in the same media and are or will be sold and provided to the same customers and in the same channels of commerce as Shuffle Master's Four Card Poker table games.

23. The presence of the Revised Awada Game in the marketplace and/or at the G2E gaming show is likely to cause confusion, or to cause mistake, or to deceive as to the source or origin of the Revised Awada Game, or to imply that there is some type of affiliation between the parties, or that Shuffle Master has sponsored, endorsed, or otherwise approved of the Revised Awada Game.

24. The presence of the Revised Awada Game in the marketplace damages the value of Shuffle Master's rights to its game Four Card Poker and in the Shuffle Master Trade Dress and in Shuffle Master's Aces Up trademark.

## FIRST CLAIM FOR RELIEF

### (Trade Dress Infringement)

25. Shuffle Master re-alleges and incorporates the allegations contained in paragraphs 1 through 24 as if fully set forth herein.

26. Since long before Defendants' conduct complained of herein, Shuffle Master has used the Shuffle Master Trade Dress in interstate commerce in connection with entertainment services, namely providing live games of chance in gaming establishments.

27. By reason of Defendants' acts complained of herein concerning the Revised Awada Game, Defendants have intentionally engaged in conduct that constitutes a false designation of origin, a false or misleading description of fact, a false or misleading representation of fact tending wrongfully and falsely to describe or represent a connection between Four Card Poker and Defendants' goods, and an infringement of Shuffle Master's trade dress rights in violation of 15 U.S.C. § 1125(a).

28. Defendants' unauthorized use of trade dress confusingly similar to the Shuffle Master Trade Dress is likely to cause confusion, mistake or deception as to the source or origin of Four Card Poker and to mislead the trade and public into believing that Shuffle Master copied the Revised Awada Game or that the Revised Awada Game is the same game as Four Card Poker, or that the Revised Awada Game originates from, is affiliated with, or is sponsored, authorized, approved or sanctioned by Shuffle Master.

6

29. Because of Defendants' conduct, Shuffle Master has been irreparably harmed in its business. Moreover, Shuffle Master will continue to suffer irreparable harm unless Defendants are restrained from infringing the Shuffle Master Trade Dress and making false designations of origin, false descriptions, or misrepresentations regarding Shuffle Master's and Defendants' goods.

30. Shuffle Master is entitled to a temporary restraining order and preliminary and permanent injunctive relief against Defendants to mitigate the irreparable harm that has been caused and continues to be caused by Defendants' actions. Shuffle Master is further entitled to monetary damages in an amount to be determined at trial.

31. As a further direct and proximate result of Defendants' conduct, Shuffle Master has been caused to incur expenses for attorney's fees and costs herein and is entitled to compensation for those expenditures in an amount to be determined by the Court.

## SECOND CLAIM FOR RELIEF

### (Trademark Infringement)

32. Shuffle Master re-alleges and incorporates the allegations contained in paragraphs 1 through 31 as if fully set forth herein.

33. Since long before Defendants' conduct complained of herein, Shuffle Master has used "Aces Up" as a trademark in interstate commerce in connection with entertainment services, namely providing live games of chance in gaming establishments.

34. The coined phrase "Aces Up" is inherently distinctive. Shuffle Master possesses valid trademark rights in and to "Aces Up."

35. Members of the consuming public are likely to confuse Defendants' unauthorized use of "Aces Up" on the felt overlay of the Revised Awada Game with Shuffle Master's Aces Up trademark.

36. By reason of Defendants' conduct complained of herein, Defendants have infringed Shuffle Master's Aces Up trademark in violation of 15 U.S.C. §1125(a).

37. As a direct and proximate result of the Defendants' conduct, Shuffle Master has been irreparably harmed in its business and will continue to suffer irreparable harm unless Defendants are restrained from infringing Shuffle Master's Aces Up trademark. Shuffle Master is therefore entitled to

///

7

a temporary restraining order, preliminary and permanent injunctive relief against Defendants to mitigate the irreparable harm that has been caused and continues to be caused by Defendants' conduct.

38. As a further direct and proximate result of Defendants' conduct, Shuffle Master has sustained monetary damages in an amount to be determined at trial.

39. As a further direct and proximate result of Defendants' conduct, Shuffle Master has been caused to incur expenses for attorney's fees and costs herein and is entitled to compensation for those expenditures in an amount to be determined by the Court.

**WHEREFORE**, Shuffle Master prays for judgment against Defendants as follows:

A. That Defendants, and all of their officers, agents, servants, employees and attorneys, and all other persons in active concert or participation with them who receive actual notice of the injunction, be temporarily, preliminarily and permanently enjoined from:

(1) Advertising, promoting, marketing, offering for sale, selling or otherwise disposing of the Revised Awada Game;

(2) Using a trade dress confusingly similar to the Shuffle Master Trade Dress in connection with the advertising, promotion, marketing, sale, or other disposal of Defendants' products;

(3) Using a trademark confusingly similar to Shuffle Master's Aces Up trademark in connection with the advertising, promotion, marketing, sale, or other disposal of Defendants' products;

(4) Making any statements, descriptions or representations that Defendants' Revised Awada Game is the same game as Shuffle Master's Four Card Poker game, or that there is some affiliation between the parties, or that Shuffle Master has sponsored, endorsed, or otherwise approved of the Revised Awada Game;

(5) Otherwise deceptively or unfairly competing with Shuffle Master in the sale of table games;

B. That Shuffle Master be awarded damages in an amount to be determined at trial;

///

8

1  C. That Shuffle Master be awarded, in an amount to be determined at trial, under 15 U.S.C. § 1117(a) the total profits received by Defendants' sales of the Revised Awada Game and any other products infringing the Shuffle Master Trade Dress and/or Shuffle Master's Aces Up trademark;

D. That Shuffle Master be awarded under 15 U.S.C. § 1117(a) enhanced damages, up to three times the amount found as actual damages for Defendants' trade dress and trademark infringement and false representations in an amount to be determined at trial;

E. That Shuffle Master be awarded punitive damages for Defendants' knowing, malicious, and oppressive acts;

F. That Defendants be ordered to deliver to Shuffle Master for destruction all labels, signs, prints, packages, wrappers, receptacles, advertising materials, table felt overlays or products that bear the Aces Up trademark or products that bear trade dress confusingly similar to the Shuffle Master Trade Dress or that result in any unfair competition to Shuffle Master;

G. That Defendants be ordered to make a written report, within a reasonable period of time, to be filed with the Court, detailing the manner of its compliance with the requested injunctive and mandatory relief above;

H. That Shuffle Master be awarded its reasonable attorney's fees and costs of suits under 15 U.S.C. § 1117(a); and

I. That Shuffle Master be awarded such other relief as the Court may deem just and proper.

DATED this ____ day of November, 2005.

**JONES VARGAS**

_(signature)_

KIRK B. LENHARD
Nevada Bar No. 1437
TAMARA BEATTY PETERSON
Nevada Bar No. 5218
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89109

*Attorneys for Plaintiff*