KIRK B. LENHARD
Nevada Bar No. 1437
PHILIP M. BALLIF
Nevada Bar No. 2650
TAMARA BEATTY PETERSON
Nevada Bar No. 5218
JONES VARGAS
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89109
Telephone: (702) 862-3300
Facsimile:   (702) 737-7705

LISA M. HOLUBAR *(Admitted Pro Hac Vice)*
KIRKLAND & ELLIS, LLP
200 East Randolph Drive
Chicago, Illinois  60601
Telephone:  312/861-2000
Facsimile:   312/8612200

*Attorneys For Plaintiff/Counterdefendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SHUFFLE MASTER, INC. | CASE NO. CV-S-05-1112-RCJ-RJJ |
| Plaintiff, | EFILE |
| v. | |
| YEHIA AWADA, and GAMING ENTERTAINMENT, INC. | **SHUFFLE MASTER'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS** |
| Defendants. | |
| GAMING ENTERTAINMENT, INC., and YEHIA AWADA, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| SHUFFLE MASTER, INC., and MARK YOSELOFF, | |
| Counterclaim-Defendants. | |

1  Defendants' Opposition to Shuffle Master's Motion to Dismiss fails to provide any
2  sufficient basis—either legal or factual—for this Court to deny the motion.  Indeed, Defendants
3  seem to acknowledge that claims for relief two and four (asserting patent misuse of the '325
4  Application and invalidity of the '325 Application, respectively) should be dismissed.  As to the
5  remainder of their claims for relief, Defendants tacitly concede that the lion's share of facts
6  underlying them are contingent or uncertain—an admission that leads to the inescapable
7  conclusion such counterclaims are not ripe.  In addition, Defendants ignore the clear and
8  controlling legal authority that: (i) patent misuse is not a proper counterclaim (claims for relief
9  one and two); (ii) the '325 Application cannot serve as a basis for an antitrust counterclaim and
10 Defendants have an obligation to plead their *Walker Process* claim with specificity (claim for
11 relief three); and (iii) the assertion of Shuffle Master's patent rights and/or its alleged failure to
12 name correct inventors cannot serve as the basis for a Lanham Act Section 43(a) claim (claim for
13 relief five).  Finally, Defendants attempt to save their remaining counterclaims with nothing
14 more than *ipse dixit* arguments.

15  Respectfully, for each of the reasons set forth in Shuffle Master's opening brief as well as
16 each of the reasons set forth herein, this Court should grant Shuffle Master's Motion to Dismiss
17 in its entirety.

**I.  Defendants' Counterclaims Are Not Ripe.**

In its opening brief, Shuffle Master established that none of Defendants' counterclaims are ripe because they hinge upon prior legal disputes that have not yet been resolved—including questions of patentability, patent validity and trade dress infringement.[1]  Shuffle Master's

---

[1] If the Court determines that any of Defendants' Counterclaims are ripe for adjudication, at the very least a stay of said claims is appropriate until the underlying issues have been fully litigated, a point that Defendants concede in their Opposition.  *See, e.g.*, Opp. at 3 ("[A]ny dismissal must be without prejudice to GEI's right to file such claims when the validity issue has been determined or, alternatively, the Court may stay this aspect of the counterclaim until such time").  Further, in making its ripeness arguments Shuffle Master was not seeking to prevent Defendants from asserting certain counterclaims at any time, only that the time is not

1

JONES VARGAS
3773 Howard Hughes Parkway - Third Floor South
Las Vegas, Nevada 89109
Tel: (702) 862-3300 Fax: (702) 737-7705

1  Memorandum of Law in Support of its Motion to Dismiss ("Memo."), Docket Entry No. 35, at p.
2  5.  In addressing the ripeness issue, Defendants essentially concede that to the extent their claims
3  for relief one, three, five, six and seven are based on the '759 Patent, they are not ripe.  *See*
4  Opposition of Counterclaim Plaintiffs to Shuffle master's Motion to Dismiss ("Opp."), Docket
5  Entry No. 38 at p. 4 ("since the Third, Fifth, Sixth and Seventh claims for relief are not
6  predicated solely upon validity issues, the motion under Rule 12(b)(1) should be denied as to
7  them").  Defendants nonetheless attempt to rescue these claims for relief by arguing that they are
8  ripe to the extent they are based on the '325 Application.  Specifically, Defendants assert that
9  "improper conduct based on the '325 Application is not contingent or hypothetical," and cite *BP*
10 *Chemicals Limited v. Union Carbide Corp.* for the proposition that they are under a reasonable
11 apprehension of an infringement action once the '325 Application becomes a patent.  4 F.3d 975,
12 978 (Fed. Cir. 1993); Opp. at p. 4.  *BP Chemicals* does not support ripeness of claims based on
13 the '325 Application for at least two reasons.  First, that case involved an issued patent, ***not*** a
14 patent application.  *Id.* at 976.  Second, the Court in that case held that the declaratory judgment
15 plaintiff did ***not*** have reasonable apprehension that it would be sued for patent infringement.  *Id.*
16 at 980.

17      Unfortunately for Defendants, just as a determination of the validity of the '759 Patent is
18 a future event, so too is the patentability of the '325 Application.  Thus, to the extent
19 Defendants' claims are based upon assertions about the '325 Application, they are not ripe.  *See*
20 *Display Research Laboratories, Inc. v. Telegen Corp.*, 133 F.Supp.2d 1170, 1173 (N.D. Cal.
21 2001) (counterclaims based on patents that might issue were speculative and not ripe for
22 review).  In short, it makes no difference for purposes of this suit and this motion that
23 Defendants ***might*** be able to properly state a claim at some indeterminate point in the future, ***if***
24 the '325 Application is ever granted.  *See Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631,

---

26  right for those counterclaims now.  That said, Shuffle Master does seek the dismissal of
    claims one, two and four with prejudice.

2

635 (Fed. Cir.), *cert. denied*, 502 U.S. 1013 (1991) ("later events may not create jurisdiction where none existed at the time of filing"); *GAF Building Materials Corp. v. Elk Corp.*, 90 F.3d 479, 482 (Fed. Cir. 1996) ("[j]usticiability must be judged as of the time of filing, not as of some indeterminate future date when the court might reach the merits and the patent has issued"); *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1060 (Fed. Cir. 1995) ("[t]he residual possibility of a future infringement suit based on [the declaratory plaintiff's] future acts is simply too speculative a basis for jurisdiction over [its] counterclaim for declaratory judgments").

Defendants also attempt to evade an adverse finding on ripeness by citing *Sandell v. F.A.A.* for the overarching proposition that "the fact that there may be a contingency involved is not necessarily dispositive…" *Id.,* 923 F.2d 661, 664 (9th Cir. 1990). Opp. at p. 5. Defendants' "contingency" argument is wrong on two fronts.

First, *Sandell* does not support a finding of ripeness here. In that case, Plaintiff Sandell was a pilot who brought suit against the FAA, seeking review of its determination that new safety rules would be applied to Sandell's airfield if a proposed competing airfield was built nearby. The Ninth Circuit found the case ripe even though it was not definite that the new airfield would be built, and thus the "ultimate injury" to the plaintiff had not yet occurred, because the FAA's determination itself had been made, and it had an impact on Sandell. *Sandell*, 923 F. 2d at 664. The Court reasoned that common sense required adjudication of the issues before any construction on the proposed airfield might occur, but more importantly, the Court noted that the FAA had conceded that its determination was a final order, and thus "[n]othing [wa]s abstract about the determinations [t]here under review." *Id.* at 664. In direct contrast, there are no such final orders determining invalidity, patentability, or trade dress non-infringement in this case, and so any review of these issues would necessarily be in the "abstract."

3

Second, even if *some* of Defendants' allegations can be proved at this time, that does not render otherwise unripe claims ripe. Judicial economy dictates that the issues raised by Defendants' Counterclaims should not be litigated in a piecemeal fashion. *See, e.g., Yaqub v. Salinas Valley Memorial Healthcare Sys.*, No. C-02-02703-JF (RS), 2005 WL 588555, *7 (N.D. Cal. Mar. 14, 2005) (granting stay where only part of claims were ripe for adjudication for "reasons of judicial economy and efficiency").[2]

**II.  Defendants Failed To State A Claim For Either Patent Misuse Or A *Walker Process* Antitrust Violation.**

**A.  Patent Misuse Is Not An Appropriate Counterclaim In This Case.**

Clear and controlling case law holds that patent misuse is an affirmative defense, not a damages counterclaim. *See Virginia Panel Corp. v. MAC Panel Corp.*, 133 F.3d 860, 868 (Fed. Cir. 1997) ("[p]atent misuse is an affirmative defense"); *B. Braun Medical, Inc. v. Abbot Labs.*, 124 F.3d 1419, 1428 (Fed. Cir. 1997) ("patent misuse may not be converted to an affirmative claim for damages"). The cases cited by Defendants do not hold otherwise. In the *Glitsch* case, which is not even on point, the Court explained:

> [A] party that did not raise the issue of patent misuse in one action may raise that issue ***in another action based on a separate assertion of infringement***, whether as a defense against the claim of infringement or in a request for declaratory relief.

*Glitsch, Inc. v. Koch Eng. Co., Inc.*, 216 F.3d 1382, 1386 (Fed. Cir. 2000) (emphasis added). Thus, at most, *Glitsch* indicates that a patent misuse claim *may* be styled as a claim for declaratory relief, but *only* in an action "based on a[n]…assertion of [patent] infringement." *See*

---

[2]  Defendants also try to save their counterclaims from dismissal by contending that "[t]he claims asserted by [Defendants] may be considered to be compulsory counterclaims, requiring that they be asserted now in order to preserve GEI's rights." Opp. at p. 3. Defendants do not support this assertion with case law, nor do they specify the claims for relief that are allegedly compulsory. Regardless, the lack of ripeness in conjunction with Federal Rule of Civil Procedure 13 belie that argument: "[a] pleading shall state as a compulsory counterclaim any claim which ***at the time of serving the pleading the pleader has*** against any opposing party…." Fed.R.Civ.P. 13(a) (emphasis added).

4

*id.* It does not hold, as Defendants would lead this Court to believe, that patent misuse may be brought as an affirmative claim for damages in any stand-alone case ***not*** involving patent infringement, such as the case at hand.[3] As such, claims for relief one and two alleging patent misuse should be dismissed with prejudice.

**B.    The '325 Application Is Not A Proper Basis For A *Walker Process* Claim.**

As explained in Shuffle Master's opening brief, the '325 Application cannot serve as the basis for any antitrust claim, because a *Walker Process* claim is predicated on an enforcement action related to an ***issued patent***. *See* Memo. at pp. 8-9. In opposing this point, Defendants ignore the law and stubbornly insist that they can base an antitrust suit on a mere application for a patent. Defendants also argue that because a Notice of Allowance has issued for the '325 Patent, it is as good as registered. Not so. *See GAF*, 90 F.3d at 483 ("[p]atent rights are created ***only*** upon the ***formal issuance*** of a patent") (emphasis added). Issuance of a Notice of Allowance does not mean that the '325 Application has matured to a registered patent, nor does it change the clear case law cited by Shuffle Master. To the extent claim for relief three is based on the assertion of rights in the '325 Application, it must be dismissed with prejudice.

**C.    Defendants Have Failed To Plead A *Walker Process* Claim.**

As an initial matter, Defendants agree that they intended their antitrust claim to fall within the ambit of *Walker Process Equip., Inc. v. Food Mach. & Chem. Co.,* 382 U.S. 172 (1965). *See* Opp. at p. 7 (arguing Defendants have properly alleged the "pertinent elements for a *Walker Process* claim"). *Walker Process* claims—which are based on fraudulent conduct before

---

[3] The additional case cited by Defendants on this point, *Marchon Eyewear, Inc. v. Tura LP,* No. 98 CV 1932(SJ), 2002 WL 31253199, *9 (E.D.N.Y. Sept. 30, 2002), is not binding precedent on this Court. Although the Court there did allow a patent misuse counterclaim, the *Marchon* case involved a primary claim of patent infringement. Furthermore, even the *Marchon* Court noted that "[p]atent misuse is generally a defense to patent infringement, which if proven, renders the patent unenforceable until purged." *Id.*

5

the Patent Office—are subject to the heightened pleading standard of Rule 9. *See Medimmune, Inc. v. Genentech, Inc.,* 427 F.3d 958, 967 (Fed. Cir. 2005) ("Like all fraud-based claims, Walker Process allegations are subject to the pleading requirements of Fed.R.Civ.P. 9(b)"), *citing Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (claims that are "grounded in fraud" or that "sound in fraud" are subject to Rule 9(b)).

As Shuffle Master explained in its opening brief, to state a *Walker Process* claim, Defendants were required to "identify the relevant geographic and product markets" and provide a "[m]arket definition." *Big Bear Lodging Ass'n v Snow Summit, Inc*, 182 F.3d 1096, 1104-05 (9th Cir. 1999). Put another way:

> In order to have antitrust standing, Defendants must also identify the relevant product market which Plaintiffs' antitrust activities are alleged to have affected. 'Without a definition of the relevant product market, there is no way to measure a company's ability to act as a monopolist.' 'A relevant market is comprised of a product market, those commodities or services that are reasonably interchangeable by consumers for the same purposes, and a geographic market, the area in which sellers of the relevant market product effectively compete."

*Marchon,* 2002 WL 31253199 at *5-6 (emphasis added).[4] Defendants made no attempt to identify or define the relevant product and geographic markets here. Nor did they allege facts sufficient to demonstrate market power. Defendants also failed to allege either antitrust injury to competition or that Shuffle Master's alleged misconduct was the "but for" cause of the '759 Patent issuing. All of these absent elements are indisputably required. *See* Memo. at pp. 10-14.

Despite their intent to allege a *Walker Process* claim, Defendants' Opposition and the cases cited therein focus on the lesser pleading requirements of Rule 8, which are inapplicable to such claims. Defendants' focus on Rule 8 is misplaced, and their antitrust counterclaim is subject to dismissal for this reason alone. But even applying the pleading standard of Rule 8, Defendants still have not sufficiently plead a claim. Rule 8 may require fewer facts than Rule 9(b), but it is not and cannot be satisfied by *no* facts—especially when an antirust claim is at

---

[4] Although the *Marchon* case is from the Eastern District of New York and therefore has no precedential value here, Shuffle Master refers to it because Defendants relied upon it.

6

issue. The bottom line: a party seeking to allege an antitrust violation must provide more than what Defendants provided here. *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 528 n.17 (1983) (holding insufficient antitrust allegations and indicating that because of massiveness of antitrust litigation, court should insist on some specificity in complaint); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("In antitrust cases [12(b)(6) motions] especially make sense because the costs of discovery in such actions are prohibitive"); *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (antitrust complaints must be reasonably specific). Defendants' claim for relief three must be dismissed.

### III. Defendants' Non-Patent, Non-Antitrust Counterclaims Must Be Dismissed.

Defendants do not even try to explain why their non-patent, non-antitrust Counterclaims should survive, addressing them in one or two *ipse dixit* sentences each. Thus, Shuffle Master will address those claims with equal brevity.

As to claim for relief five (Lanham Act), Shuffle Master established both that Defendants (i) failed to plead the required interstate commerce and materiality elements of their claim, and (ii) ignored that a Lanham Act claim cannot be based on certain statements related to a party's patent rights. Memo. at pp. 14-15. Defendants urge this Court to overlook their failure to expressly allege the interstate commerce element of their Lanham Act unfair competition claim, arguing that this element can be "reasonably inferred" from their scant pleading. Opp. at p. 7. But even if the Court were to do so, this claim must still fail. Defendants failed to allege materiality, a point they do not address in their opposition. Furthermore, neither Shuffle Master's assertion of its patent rights, nor its alleged failure to name the correct inventor on its patents can serve as the basis for an unfair competition claim, and Defendants' conclusory Opposition completely ignores both these points and the law cited by Shuffle Master. *Compare* Opp. at 7 with Memo. at 15-16.

7

As to claim for relief six (interference), Shuffle Master established in its opening brief that Defendants failed to identify any specific third party relationship(s) with which Shuffle Master allegedly interfered and failed to plead the absence of privilege. Memo. at pp. 17-18. Defendants' only response is to flatly maintain that "the allegations of the counterclaim are sufficient under the Federal Rules." Opp. at p. 8. Defendants' complete inability to rebut the points raised by Shuffle Master further demonstrates that the instant motion should be granted.

As to claim for relief seven (trade libel), Shuffle Master established that Defendants failed to plead special damages. Defendants' only response is to incorrectly claim that Shuffle Master "cites no decision" to support the definition of "special damages" required to state this claim. Opp. at p. 8. Shuffle Master's failure to cite a Nevada opinion is not surprising. As Shuffle Master noted in its opening brief, Shuffle Master is aware of no Nevada court that has recognized trade libel as a viable claim under Nevada law. Memo. at p. 17. Regardless, Shuffle Master's definition of "special damages" is taken directly from *Bose Corp v. Consumers Union of U.S., Inc.*, 529 F. Supp. 357, 362 (D. Mass. 1981), *judgment rev'd*, 692 F.2d 189 (1st Cir. 1982), *judgment aff'd*, 466 U.S. 485 (1984), a decision affirmed by no less than the United States Supreme Court. Memo. at p. 17. Defendants' misreading of Shuffle Master's brief and their simple insistence that their pleadings *are* sufficient does not change the law, nor the fact that Defendants' seventh claim for relief is not up to par.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

8

///

///

///

## IV. CONCLUSION

For the foregoing reasons, Shuffle Master respectfully renews its request that this Court enter an Order dismissing with prejudice each claim for relief of Defendants' Counterclaim.

RESPECTFULLY SUBMITTED this 7th day of February, 2006.

**JONES VARGAS**

By: ___//Lisa M. Holubar, Esq.//___
KIRK B. LENHARD
Nevada Bar No. 1437
PHILIP M. BALLIF
Nevada Bar No. 2650
TAMARA BEATTY PETERSON
Nevada Bar No. 5218
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89109

LISA M. HOLUBAR *(Admitted Pro Hac Vice)*
KIRKLAND & ELLIS, LLP
200 East Randolph Drive
Chicago, Illinois 60601

*Attorneys For Plaintiff*

JONES VARGAS
3773 Howard Hughes Parkway - Third Floor South
Las Vegas, Nevada 89109
Tel: (702) 862-3300 Fax: (702) 737-7705

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 7th day of February, 2006 and pursuant to FRCP 5(b), I served via electronic service and/or deposited for mailing in the U.S. Mail a true and correct copy of the foregoing **Shuffle Master, Inc.'s Reply Memorandum in Support of its Motion to Dismiss Defendants' Counterclaims**, postage prepaid and addressed to:

DAVID N. MAKOUS, ESQ.
Lewis Brisbois Bisgaard & Smith LLP
221 North Figueroa Street, Suite 1200
Los Angeles, CA  90012
Facsimile No. 213/250-7900

SHERI SCHWARTZ, ESQ.
Lewis Brisbois Bisgaard & Smith LLP
400 South Fourth Street, Fifth Floor
Las Vegas, Nevada  89101
Facsimile No. 893-3789

*Attorneys for Defendants*

　　　　　　　　　　　　　　　　　　　　//Linda M. Kapcia//
　　　　　　　　　　　　　　　　　　　An employee of Jones Vargas

JONES VARGAS
3773 Howard Hughes Parkway - Third Floor South
Las Vegas, Nevada 89109
Tel: (702) 862-3300 Fax: (702) 737-7705

10