# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SHUFFLE MASTER INC., ) | |
| ) | 2:05-CV-01112-RCJ-(RJJ) |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| YEHIA AWADA, et al., ) | |
| ) | |
| Defendants. ) | |

This matter coming before the Court on Counter-Defendant's Motion for Preliminary Injunction (#41) filed March 27, 2005. The Court has considered the Motion, the pleadings on file, and oral arguments on behalf of behalf of the parties. IT IS HEREBY ORDERED that Counter-Defendant's Motion for Preliminary Injunction (#41) is *granted*.

## FACTS

Both parties to this action are innovators of specialty casino table games. Plaintiff Shuffle Master, Inc. Brought its original Complaint against Defendants Yehia Awada ("Yehia") and Gaming Entertainment, Inc. on September 12, 2005, for trade dress infringement, in violation of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff's Complaint alleges that while in attendance at the Las Vegas G2E Gaming Convention Center in early September, Defendants unveiled their new and improved version of their Play Four Poker

game, which Plaintiff asserts copied Shuffle Master's game "Four Card Poker"—a table game played on a semi-circular gaming table that is based on a four-card hand of poker. Shuffle Master moved the Court for a TRO to stop Defendants from copying Shuffle Master's trade dress of Four Card Poker. On September 28, 2005, and again on December 6, 2005, the parties voluntarily stipulated to maintain the TRO until a preliminary injunction hearing could be scheduled. Plaintiff filed the instant Motion for Preliminary Injunction (#41) on February 27, 2006. Defendants filed an Opposition (#64) to the Motion on March 13, 2006.

## DISCUSSION

The Ninth Circuit utilizes two alternative tests for evaluating the issuance of injunctive relief. Traditionally, the applicant was required to demonstrate: (1) a liklihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance of hardships favors the applicant; and (4) whether any public interest favors granting the injunction. Raich v. Ashcroft, 352 F.3d 1222, 1227 (9th Cir. 2003).

Recently the Ninth Circuit has employed an alternate standard, requiring the applicant to establish either: 1) a combination of probable success on the merits and the possibility of irreparable harm; or 2) that serious questions are raised going to the merits, and the balance of hardships tips sharply in the applicant's favor. See e.g., Bernhardt v. los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003).

The two tests are not inconsistent, as both "represent a continuum of equitable discretion, whereby 'the greater the relative hardship to the moving party, the less probability of success must be shown.'" Raich, 352 F.3d at 1227 (citing Nat'l Center for Immigrants Rights, Inc. v. INS, 743 F.2d 1365, 1369 (9th Cir. 1984)). When an injunction is issued, the applicant is required to give security "in such sum as the court deems proper, for the payment

of costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (2004).

**I.    Likelihood of Success on the Merits**

Plaintiff Shuffle Master has alleged that Defendants committed trade dress infringement, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Trade dress is defined as the "total image of a product, and may include features such as size, shape, color combinations, texture, and graphics." International Jensen, Inc. v. Metrosound U.S.A., 4 F.3d 819 (9th Cir. 1993). To prevail on its trade dress infringement claim, Shuffle Master must prove that the Four Card Poker trade dress is (1) protectable, (2) nonfunctional, and (3) that there is a likelihood of confusion between the Four Card Poker Trade Dress and the revised Awada Game. General Motors Corp. v. Let's Make a Deal, 223 F. Supp. 2d 1183, 1190 (D. Nev. 2002).

**A. Protectable**

"Trade dress is protected if it is inherently distinctive or has acquired secondary meaning." General Motors Corp., 223 F. Supp. 2d at 1195.

1. Inherently Distinctive

To determine the inherent distinctiveness of a trade dress, courts look to the trade dress as a whole. Although some of the individual parts or elements of a trade dress may lack distinctiveness on their own, the innovative and arbitrary combination of all of the elements together render the dress as a whole inherently distinctive. Taco Cabana Int'l, Inc. v. Two Pesos, Inc., 932 F.2d 1113, 1120 (5th Cir. 1991) *aff'd*, 505 U.S. 763 (1992). In Taco Cabana, the Supreme Court held that marks that are suggestive, arbitrary, or fanciful may be deemed inherently distinctive because their "intrinsic nature serves to identify a particular source of a product." Id. at 768.  Plaintiff's trade dress appears inherently distinctive when considering

all of the elements together.

2. Secondary Meaning

Trade dress is held to have secondary meaning "if the purchasing public associates it with a specific producer or source rather than with merely the product." General Motors Corp., 223 F. Supp. 2d at 1195. The Ninth Circuit has identified several factors that may help determine secondary meaning: (1) the length and manner of plaintiff's use of the product; (2) the exclusivity of the use; (3) the degree and manner of plaintiff's product advertising; (4) evidence of product sales; (5) defendant's intent to copy; and (6) whether actual purchasers associate the product trade dress with the Plaintiff. See General Motors, 223 F. Supp. 2d at 1195; see also Sunburst Products, Inc. v. Derrick Law Co. Ltd., No 89-56025, 1991 WL 1523, at *3 (9th Cir. 1991). Further, the Ninth Circuit has held that consumer surveys, though not required, may provide "the most persuasive evidence of secondary meaning" in a trade dress infringement case. Locomotor USA, Inc. v. Korus Co., Inc., 46 F.3d 1142, *7 (9th Cir. 1995)(unpublished); see also Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1358 (9th Cir. 1985).

Defendants argue that Shuffle Master's trade dress is a product trade dress, not a packaging trade dress, and thus that it cannot be inherently distinctive. (Def.'s Opp. at 7–8.) Here, though the Court is inclined to agree with Plaintiff regarding the type of trade dress involved.  For each of the elements, alternative designs are available; and while they each are used as a part of, or instruction for, the game, their peculiar design and the exact combination of these designs demonstrate an inherent distinctiveness.

Shuffle Master has provided evidence demonstrating that in spite of the large number of gaming tables in the market, none have shared the appearance of Shuffle Master's Four Card Poker game until the alleged infringement. (Pl.'s Mot. Ex. C ¶ 6.) Plaintiff has also

1  shown that they have gone to great lengths to advertise and promote its Four Card Poker trade
2  dress, and have made significant sales in the gaming market (Pl.'s Mot. Ex. E ¶¶ 10, 18, 19
3  Ex. A. ¶¶ 18–19.) Defendants' intent to copy may be inferred from evidence demonstrating
4  that they had their own version of a four card poker game table felt design for several years
5  before switching to the subject design of this case, which is strikingly similar to Plaintiff's
6  table felt design.

7  Additionally persuasive is Shuffle Master's evidence in the form of a survey of table
8  game managers from a cross-section of casinos in the United States indicating that 35% of
9  individuals interviewed associated Shuffle Master's Four Card Poker Game with a single
10 source. (Pl.'s Mot. Ex. F.)[1]

11 **B. Non Functional**

12 The Ninth Circuit has stated that "trade dress is functional when the design of the
13 dress "is essential to the use or purpose of the article," if the design "affects the cost or
14 quality of the article," or if exclusive use of the dress by one party would "put competitors at
15 a significant, non-reputation-related disadvantage." Clicks Billiards, Inc. v. Sixshooters, Inc.,
16 251 F.3d 1252, 1258 (9th Cir. 2001) (internal quotations omitted). The Court considers four
17 factors in determining whether a trade dress is functional; (1) whether the design yields a
18 utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising
19 touts the utilitarian advantages of the design, and (4) whether the particular design results
20 from a comparatively simple or inexpensive method of manufacture. Id. at 1260 (internal
21 quotations omitted). In contrast, trade dress is non-functional if it is a composite of features

---

[1] Various courts have held that such a percentage of recognition (approximately 30% or more) is probative of secondary meaning. See Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277 (7th Cir. 1998); Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 795 (5th Cir. 1983); McNeil-PPC v. Granutec, Inc., 919 F. Supp. 198 (E.D. N.C. 1995).

that are "arbitrarily affixed or included for aesthetic purposes." General Motors, 223 F. Supp. 2d at 1196. Regarding functionality, the Ninth Circuit has stated,

> [I]n evaluating functionality as well as the other elements of a trade dress claim, it is crucial that we focus *not* on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create. Trade dress is the composite tapestry of visual effects. Courts have repeatedly cautioned that, in trademark-and especially trade dress-cases, the mark must be examined as a whole, not by its individual constituent parts.

Id. at 1259. Thus, features, functional when considered individually, may make up part of an overall non-functional trade dress when considered together.

Defendants argue that the functionality of Shuffle Master's Four Card Poker game is evidenced by the shapes of the design's elements, particularly betting circles, the identification of the possible bets at each player station, the wages depiction, fonts, and wording of text, among other things. (Def's Opp. at. 10–14.) Defendants also contend that Shuffle Master's overall trade dress is "necessitated by the rules of the Four Card Poker game itself" and because much of the claimed configuration is the subject of utility patents owned by the Plaintiff.

While the individual elements of Plaintiff's trade dress may serve as functional elements (such as circles to designate where a player should place an ante), the focus of the functionality inquiry is upon the "overall visual impression that the combination and arrangement of those elements create." Clicks Billiards, 251 F.3d at 1259. Furthermore, the Supreme Court has ruled that a manufacturer seeking "to protect arbitrary, instrumental, or ornamental aspects or features of a product found in patent claims," may prove that such aspects of the product "do not serve a purpose within the terms of the utility patent," and therefore may escape the functional classification. Traffix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 34 (2001). Further, as discussed below, Plaintiff demonstrates

that the rules of play for the Four Card Poker Game do not necessitate the particular trade dress at issue here.

Defendants contend that Plaintiff's trade dress is *de jure* functional because the trade dress at issue is "essential to the use or purpose of the product itself." (Def.'s Opp. at 8.) See Leatherman Tool Group, Inc. v. Cooper Industries, Inc., 199 F.3d 1009 (9th Cir. 1999) (finding *de jure* functionality where a product is in a particular shape "because it works better in this shape.") (Internal citation omitted). Shuffle Master has demonstrated however that its design is not *de jure* functional, as Defendants existed in the market with their own version of four card poker for several years using a table design that was different in appearance than Shuffle Master's. It is this very fact that proves that Shuffle Master's trade dress yields no utilitarian advantages.  Not only did Defendants market a table design different than Shuffle Master's prior to changing to the design at issue here, but following the Court's issuance of the TRO Defendants came forward with yet another design that did not mirror Shuffle Master's. (Def.'s Mot. Ex. 1 at 3–5.)

Therefore, Plaintiff has sufficiently demonstrated that its table design, or trade dress for Four Card Poker is non-functional.

**C. Likelihood of Confusion**

"Likelihood of confusion is 'the most important element' of the three components of a protectable mark." Clicks Billiards, 251 F.3d at 1264–64 (citing Kendall-Jackson Winery Ltd. v. E&J Gallo Winery, 150 F.3d 1042, 1048 (9th Cir. 1998). A likelihood of confusion exists if the "similarity of the marks is likely to confuse customers about the source of  the products." Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1053 (9th Cir. 1999).

The Ninth Circuit holds that an evaluation of the likelihood of confusion in trade

dress cases must "be made in light of 'the total effect of the defendant's product and package on the eye of the ordinary purchaser.'" Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 616 (9th Cir. 1989) (citing First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1384 (9th Cir. 1987). Further, the Court has identified several factors, the analysis of which helps determine the likelihood of confusion: (1) the similarity of the parties' trade dress; (2) the similarity of the parties' goods and services; (3) the marketing channels used; (4) the alleged infringer's intent in selecting the accused trade dress, (5) the strength of the protected trade dress; (6) the type of goods and services the product provides; (7) evidence of actual confusion; and (8) the likelihood of expansion to the product lines. See Brookfield, 174 F.3d at 1054 (referencing eight factors Ninth Circuit identified in AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979), for guidance in determining likelihood of confusion). Courts are not required to consider all eight factors identified is Sleekcraft to determine likelihood of confusion. Apple Computer, Inc. v. Formua Int'l Inc., 725 F.2d 521, 526 (9th Cir. 1984).

Here, Plaintiff has demonstrated a myriad of reasons establishing a likeliness of confusion. First, and most obvious, is that Defendants' trade dress is virtually identical to Shuffle Master's. Similarly, the goods and services offered by the two products are identical, as both parties have admitted that they are direct market competitors. Third, the parties have similar marketing channels, as evidenced by both parties' presence at the Las Vegas G2E gaming convention, and Defendants' contention that Plaintiff's actions in this case are intended to "intimidate GEI's customers." (Def.'s Opp. at 2.) Fourth, as discussed above, the Defendants intended their trade dress to be associated with Shuffle Master's Four Card Poker game. This Court has held that if an accused infringer knowingly adopts a mark similar to

another's, "courts will presume that it can achieve its purpose in deceiving the public." Caesars World, Inc. v. Milanian, 247 F. Supp. 2d 1171, 1200 (D. Nev. 2003) (citing Sleekcraft, 599 F.2d at 354). Given Shuffle Master's recognition in the industry (as evidenced by Plaintiff's survey (Ex. F.)), it would be difficult to believe Defendants were not aware of Plaintiff's trade dress. And further, the survey conducted by Shuffle Master implies that Shuffle Master's table design is a strong trade dress.[2]

Shuffle Master has demonstrated ample evidence that the total image of Defendants' product, when compared to that of the Plaintiff's is likely to cause confusion among consumers.

Altogether, Plaintiff has adequately proven that its trade dress for Four Card Poker is protectable, non-functional, and that there is a likelihood of confusion between its trade dress and that of Defendants' Revised Awada game. Therefore, Plaintiff has established a strong probability that its claim will succeed on the merits.

## II.    Irreparable Injury

In order to qualify for injunctive relief, Plaintiff must also establish that it will suffer irreparable injury if injunctive relief is denied. See Fed. R. Civ. P. 65. However, in a trademark infringement case, irreparable injury is presumed from a showing of likelihood of success on the merits. See El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032 (9th Cir. 1032); Cadence Design Sys. Inc. v. Avant! Corp., 125 F.3d 824, 827 (9th Cir. 1997). As shown above, Plaintiff Shuffle Master has established a likelihood of success on the merits of its trade dress infringement claim, and thus Plaintiff has also established the irreparable injury requirement.

---

[2]See supra Section I.A.2.

### III. Balance of Hardships

If the Court determines that Plaintiff has not established a likelihood of success on the merits, Plaintiff is still entitled to injunctive relief if (1) it shows that there are serious questions as to the merits of Plaintiff's claims, and (2) the balance of hardships weigh in favor of the Plaintiff. See A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001).

As to the "serious questions" requirement, the same arguments set forth under the "Likelihood of Success on the Merits" section are applicable here. Because the "serious questions" standard is less stringent, the Court finds it satisfied given the discussion above. Further, as the Defendant has been able to produce alternative designs during the pendency of this litigation, it is apparent that the balance of hardships weigh in favor of the Plaintiff.

### CONCLUSION

IT IS HEREBY ORDERED that Counter-Defendant's Motion for Preliminary Injunction (#41) is *granted*.

DATED: August 31, 2006.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE