1

2

3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

4

5

6

7

8

9

10

| | | |
|---|---|---|
| SHUFFLE MASTER, INC., | ) | |
| Plaintiff, | ) | 2:05-CV-1112-RCJ (RJJ) |
| | ) | |
| vs. | ) | |
| | ) | **O R D E R** |
| YEHIA AWADA, | ) | |
| Defendant. | ) | |

11

12

Before the Court for consideration is Plaintiffs' Motion to Dismiss Defendants'

Counterclaims (# 35).  The Court has considered the Motion, the pleadings on file, and oral

13

arguments on behalf of the parties.  It is hereby ordered that Plaintiffs' Motion to Dismiss be

14

*granted* in part and *denied* in part.  Plaintiffs' Motion to Dismiss is *granted* as to Defendants'

15

first, second, and fourth Counterclaims and *denied* as to Defendants' third, fifth, and seventh

16

Counterclaims.  Plaintiffs are granted leave to amend the sixth Counterclaim.

17

**BACKGROUND**

18

Both parties to this action are innovators of specialty casino table games.  Plaintiff

19

20

Shuffle Master, Inc. brought its original complaint against Defendants Yehia Awada and

Gaming Entertainment, Inc. (collectively "Defendants") on September 12, 2005, alleging

21

trade dress infringement, that Defendants had copied Shuffle Master's game "Four Card

22

Poker"—a table game played on a semi-circular gaming table that is based on a four-card

23

hand of poker, by producing its own game entitled "Play Four Poker" ("the original Awada

24

game").  Shuffle Master also moved the Court for a TRO to stop Defendants from copying

25

1
2
3
Shuffle Master's trade dress of Four Card Poker.  On September 14, 2005, the Court entered

Plaintiffs' requested TRO, temporarily enjoining Defendants from using or displaying its

alleged infringing gaming table.

4
5
6
7
8
On September 28, 2005, and again on December 6, 2005, the parties voluntarily

stipulated to maintain the TRO until a preliminary injunction hearing could be scheduled.

Plaintiffs filed an amended complaint on December 7, 2005, and Defendants filed their

Answer and Counterclaims to the Complaint on October 3, 2005[1].

9
10
11
12
Although Defendants did not assert "counterclaims" outright in their answer, their

responsive pleading states seven separate "claims for relief," which we will treat as

Counterclaims, including claims for patent misuse, antitrust violations, declaratory relief of

patent invalidity, unfair competition, intentional interference, and trade libel.

13
14
15
16
17
Plaintiffs group Defendants' Counterclaims into two general contentions.  First,

Shuffle Master intentionally named the wrong investors in its '759 patent and '325

application to the Patent and Trademark Office in order to obtain the benefit of an earlier

filing date.  Second, Shuffle Master has defamed and disparaged Defendants by making false

statements about the subject matter of this case.

18
19
20
21
22
Here, Plaintiff Shuffle Master, together with co-counterclaim-defendant and CEO

Mark Yoseloff ("Yoseloff") (collectively "Plaintiffs"), move to dismiss Defendants'

Counterclaims under Federal Rules Civil Procedure 12(b)(1) and (6) arguing that Defendants'

Counterclaims are not ripe, and that Defendants have failed to state a claim for any cause of

23
24
[1]Although Defendants' Answer was filed prior to Plaintiff's Amended Complaint, the parties have
stipulated to treat Defendants' Answer and Counterclaims as properly filed on December 5, 2005.

25

1  action upon which relief can be granted.  Defendants, in opposition, contend that Shuffle

2  Master and Yoseloff incorrectly characterize their Counterclaim, and assert that their

3  Counterclaims (with the exception of the second and fourth claims for relief)[2] are ripe for

4  adjudication and are sufficiently pled.

5  **DISCUSSION**

6  **I.  Standards of Review**

7  As stated above, Shuffle Master and Yoseloff contend that Defendants' counterclaims

8  should be dismissed under Federal Rules Civil Procedure 12(b)(1) and (6), for lack of subject

9  matter jurisdiction and failure to state a claim upon which relief can be granted.

10  **A. Rule 12(b)(1) Standard**

11  Federal Courts are courts of limited jurisdiction.  Unlike state courts, they have no

12  "inherent" or "general" subject matter jurisdiction.  They can adjudicate only those cases

13  which the Constitution and Congress authorizes them to adjudicate: basically those cases

14  involving diversity of citizenship, or a federal question, or to which the United States is a

15  party.  See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994).

16  Furthermore, Federal Courts are presumptively without jurisdiction over civil actions,

17  and the burden of establishing the contrary rests upon the party asserting jurisdiction.  Id.

18  Lack of subject matter jurisdiction is never waived and may be raised by either party or the

19  court at any time.  Attorneys Trust v. Videotape Computer Products, Inc., 93 F.3d. 593,

20

21

22  [2]Defendants admit that their second and fourth calims for relief, for "patent application misuse, and

23  declaratory relief" as to the '325 patent application may be dismissed at this time, without prejudice as they are

24  premature.  (Def.'s Opp'n, #38 at 2 n.1.)

25  Page 3 of  12

1    594–95 (9th Cir. 1996).  Lack of subject matter jurisdiction may be raised by the district court

2    *sua sponte*: "Nothing is to be more jealously guarded by a court than its jurisdiction.

3    Jurisdiction is what its power rests upon.  Without jurisdiction it is nothing."  In re Mooney,

4    841 F.2d. 1003, 1006 (9th Cir. 1988).

5        **B. Ripeness**

6        Plaintiffs first assert that the issues raised in Defendants' Counterclaims are not ripe

7    for adjudication and therefore, that this Court lacks subject matter jurisdiction.  Specifically,

8    Plaintiffs contend that the asserted factual allegations underlying Defendants' Counterclaims

9
     cannot be proved or disproved until other legal disputes are resolved.

10
        The ripeness doctrine is "peculiarly a question of timing," Regional Rail Reorg. Act
11
     Cases, 419 U.S. 102 (1974), designed to protect the courts "against premature adjudication of
12
     suits in which declaratory relief is sought," Hodgers-Durgin v. de la Vina, 199 F.3d 1037,
13
     1044 (9th Cir.1999) (en banc), in order to prevent "entanglement in theoretical or abstract
14
     disagreements that do not yet have a concrete impact on the parties."  18 Unnamed "John
15
     Smith" Prisoners v. Meese, 871 F.2d 881, 883 (9th Cir. 1989).  "There is no subject matter
16
     jurisdiction to grant declaratory relief as to the rights or liabilities that do not yet exist or are
17
     not certain to arise."  Landover Corp v. Bellevue Master, LLC, 2006 WL 47662 *4 (D.C.
18
     W.D. Wash. Jan. 6, 2006).  Therefore, to ensure the "jurisdictional prerequisite is satisfied,"
19
     the Court must consider whether the issues presented are "definite and concrete, not
20
     hypothetical or abstract."  Thomas v. Anchorage Equal Rights Com'n, 220 F.3d 1134, 1139
21
     (9th Cir. 2000).
22
23       Defendants' Counterclaims for patent misuse and declaratory relief relies on
24

25                                    Page 4 of  12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

allegations that Shuffle Master has knowingly attempted to enforce an invalid patent or patent application.  Plaintiffs contend, and Defendant agrees that the validity of Shuffle Master's '759 patent is currently being litigated in another lawsuit, and its '325 Application is currently being evaluated by the PTO.  (See Def.'s Oppo., #38 at 4.)  Plaintiffs assert that Defendants' Counterclaims for unfair competition and trade libel are not ripe because each claim requires that Shuffle Master has made a false statement.  To the extent that the alleged false statements are regarding the validity of Shuffle master's patent rights in '759 and '325, Plaintiffs contend that the claims are unripe for the same reason.

Here, Defendants have admitted its allegations of patent application misuse and declaratory relief in regard to the '325 are premature, yet do not admit as much regarding their '759 claim.  Noting Defendants' admission that Shuffle Master's '759 patent is currently being litigated in another lawsuit, this Court dismisses Defendants' patent misuse claims as to '759 as well, as a determination of patent misuse may pose a collateral attack on the ruling of the related litigation.

Further, as discussed below, Defendants' antitrust Counterclaim is neither contingent or hypothetical, and is independent of any claim regarding the validity of Shuffle Master's '759 patent.  Similarly, Defendants' Counterclaim for trade libel goes beyond what a certification of the '759 patent's validity may immediately cure.  Therefore, the Court dismisses, without prejudice, Defendants' first, second, and fourth Counterclaims (for patent misuse ('325 and '759) and declaratory relief ('325) respectively) because such claims are not yet ripe for adjudication.  The Court does not dismiss the fifth and seventh counterclaims (for antitrust violations and trade libel, respectively).

**C. Rule 12(b)(6) Standard**

Dismissal for failure to state a claim under Rule 12(b)(6) is proper only if it is beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.   Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir. 2000). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the plaintiff.   In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996).  Although courts assume the factual allegations to be true, courts should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."   W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

On a motion to dismiss, the court "presumes that general allegations embrace those specific facts that are necessary to support the claim."   Lujan v.  Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990).  However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss under Rule 12(b)(6).   In re Stac Elecs., 89 F.3d at 1403.  If either party submits materials outside of the pleadings in support or in opposition to the motion to dismiss, and the district court relies on these materials, the motion may be treated as one for summary judgment.   Anderson v.  Angelone, 86 F.3d 932, 934 (9th Cir. 1996).

**II. Defendants' Claim for Patent Misuse**

Defendants' first Counterclaim asserts that Plaintiff Shuffle Master engaged in patent misuse by failing to disclose to the USPTO the identity of the actual inventors of the '759 patent, but instead made material misrepresentations and omissions in an attempt to obtain an earlier filing date.  Shuffle Master and Yoseloff contend that Defendants' Counterclaims for

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

patent misuse should be dismissed because patent misuse is an affirmative defense, and not a

basis for a damages counterclaim.  Most courts agree with Plaintiffs and have held that a

defense of patent misuse "may not be converted to an affirmative claim for damages simply

by restyling it as a declaratory judgment counterclaim."  See Braun Med., Inc. v. Abbott

Labs, 124 F.3d 1419, 1427 (Fed. Cir. 1997).  Defendants however cite Glitsch, Inc. v. Kocj

Engineering Co., Inc., 216 F.2d 1382, 1386 (Fed. Cir. 2000), in which the Federal Circuit

Court of Appeals recognized that a party that did not raise the issue of patent misuse in one

action "may raise that issue in another action based on a separate assertion of infringement

whether as a defense claim of infringement or in a request for declaratory relief," so long as

such treatment does not allow a collateral attack on a ruling in the first action, "the effect of

which would be to alter the judgment in that action."

Here, however, Defendants admit that the relief for such an action is equitable in

nature and seek leave to amend its Counterclaim to allege more appropriate damages.

Defendants' claims for patent misuse fail for two reasons.  First, the '325 application claim

fails because patent misuse requires first that a patent be granted.  Here, Shuffle Master does

not yet have a '325 patent grant.  Second, as discussed above, Defendants' Counterclaims for

patent misuse is not brought in an action based on an assertion of patent infringement, and

therefore should not be brought other than as an affirmative defense.  Therefore, Defendants'

first and second Counterclaims for patent misuse are dismissed without prejudice at this time.

**III. Defendant's Antitrust Counterclaim**

Defendants' third Counterclaim alleges that Shuffle Master and Yoseloff attempted to

enforce its patent rights by way of the '759 Patent Case in violation of Section 2 of the

1   Sherman Antitrust Act, 15 U.S.C. § 2.  The counterclaim also avers that Plaintiffs' '759

2   Patent Case is "baseless" and was commenced in "bad faith." (Def.'s Answer, #26 at 11–12.)

3   Plaintiffs claim that Defendants fail to adequately plead the required elements of an Antitrust

4   claim.

5       To sustain a Sherman Act claim, Defendants must, at a minimum, plead that: (1)

6   Shuffle Master had a specific intent to monopolize; (2) Shuffle Master has a dangerous

7   probability of success of monopolization in the relevant market; (3) antitrust injury to

8   competition in that market; (4) the pertinent elements of a "Walker process" claim, including

9   at least that fraud on the PTO was the but-for cause of issuance of the patent at issue.  See

10  Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172 (1965).

11

12  **1. '325 Antitrust Claim**

13      An enforcement action or infringement lawsuit are prerequisites to a patent-based

14  antitrust claim.  See Nobelpharma AB v. Implant Innovatins, Inc., 141 F.3d 1059 (Fed. Cir.

15  1998).  Here, as Shuffle Master points out, its '325 application has not yet been issued a

16  patent, and therefore, Shuffle Master has no ability to assert patent rights in it or to bring an

17  enforcement action.  Therefore, the Court dismisses Defendants' third Counterclaim alleging

18  antitrust violations in regard to Shuffle Master's '325 application.

19  **2. '759 Antitrust Claim**

20      Shuffle Master contends that Defendants fail to adequately plead all of the above

21  mentioned required elements of a patent-based antitrust claim.  See Les Shockley Racing,

22  Inc. v. National Hot Rod Ass'n, 884 F.2d 504 (9th Cir. 1989).  Particularly, Shuffle Master

23  contends: (1) that Defendants fail to plead sufficient facts supporting a dangerous probability

24

25                          Page 8 of  12

of success in the relevant market because they do not identify the markets affected by Shuffle

Master's alleged antitrust violations, market share, or sufficient facts to support the idea that

Shuffle master will obtain an actual monopoly in a defined market; (2) that Defendants do not

plead Antitrust injury or allege any factual basis for harm to competition—other than

allegations that Defendants themselves will suffer; and (3) that Defendants fail to assert or

prove that Shuffle Master's alleged misconduct in the PTO was the "but for" cause of the

patent issuing.

       The Ninth Circuit has held that "there are no special rules of pleading in antitrust

cases," and that a party asserting an antitrust action is required only to comply with the rules

of pleading under Federal Rule Civil Procedure 8, and not the particularity requirement of

Rule 9(b).  Walker Distributing Co. v. Lucky Lager Brewing Co., 323 F.2d 1, 3 (9th Cir.

1963).  Here, Defendants' Counterclaims are sufficient to aver an antitrust claim against

Shuffle Master.  Particularly, Defendants have alleged Shuffle Master's intent to monopolize

(Def.'s Answer, #26 at ¶ 29), the dangerous probability of success (Id., #26 at ¶ 11, A)

(alleging SM's attempt to coerce casinos to acquire their poker table games), injury to

competition, (Id., #26 at ¶ 11, G), and the pertinent elements for a Walker Process claim (Id.,

#26 at ¶ 10.)

       Therefore, construing the claims in the light most favorable to the Claimants, the

Court does not dismiss the portion of Defendants' third Counterclaim alleging antitrust

violations with respect to the '759 patent.

**IV. Defendants' Counterclaim for Intentional Interference**

       Defendants' Sixth Counterclaim alleges that Shuffle Master and Yoseloff have

1  "intentionally adopted a bad faith anti-competitive course of action . . . to disrupt

2  [Defendant's] ongoing relationships with customers." (Def.'s Answer, #26 at ¶ 45.)

3      To state a claim for intentional interference with a prospective business advantage

4  Defendants must plead: (1) a prospective contractual relationship between Defendants and a

5  third party; (2) knowledge by Shuffle Master of the prospective relationship; (3) intent to

6  harm Defendants by preventing the relationship; (4) the absence of privilege or justification

7  by Shuffle Master; and (5) actual harm to defendants as a result of Shuffle Master's alleged

8  conduct.  Wichinsky v. Mosa, 847 P.2d 727 (Nev. 1993).  The absence of any one of these

9  five elements means the claim must fail.  Id. at 730.

10

11     Further, to prove the existence of a contractual relationship, Defendants are required

12 to identify a third party relationship from which they reasonably expect to realize an

13 economic gain.  Cascade Investments, Inc. v. Bank of America, N.A., S.A., Case No. CV-N-

14 99-559-ECR, 2000 WL 1842945 (D. Nev. Sept. 29, 2000).

15     Defendants' claim for intentional interference is weak and generalized, and fails to set

16 forth the necessary elements.  Defendants fail to plead that any contractual relationship exists

17 or to identify any third party, with whom they have a relationship and from which expect to

18 gain economically.  Further, Defendants also fail to plead the absence of privilege by Shuffle

19 Master.  Therefore, this Court dismisses Defendants' Counterclaim for Intentional

20 Interference without prejudice.  However, at oral argument on this matter, counsel requested

21 and the Court granted leave to amend this counterclaim.

22 **V. Defendants' Counterclaim for Libel**

23     Defendants' seventh Counterclaim is for trade libel, alleging that Shuffle Master and

24

25                                Page 10 of  12

1   Yoseloff made purposefully false statements regarding Defendants' Play Four Poker game

2   with malice and bad faith.

3       Trade libel is the intentional disparagement of the quality of property that results in

4   pecuniary damage.  Federal Agr. Mortg. Corp. v. It's A Jungle Out There, 2005 WL 3325051

5   (N.D. Cal. Dec. 7, 2005) (citing ComperXpress, Inc. v. Jackson, 93 Cal.App.4th 993, 1010,

6   113 Cal.Rptr.2d 625 (2001)).  "To constitute trade libel, a statement must be false."  Id.

7       To plead a claim for trade libel, a plaintiff must allege "that the defendant: (1) made a

8   statement that disparages the quality of the plaintiff's product; (2) that the offending

9   statement was couched as fact, not opinion; (3) that the statement was false; (4) that the

10  statement was made with malice; and (5) that the statement resulted in monetary loss."

11  BriteSmile, Inc. v. Discus Dental, Inc., 2005 WL 3096275 *6 (citing Optinrealbig.com, LLC

12

13  v. Ironport Systems, Inc., 323 F. Supp.2d 1037, 1048 (N.D. Cal. 2004)).  See also,

14  RESTATEMENT SECOND OF TORTS, §§ 623A. 626 (1977).

15      Shuffle Master argues that Defendants fail to plead sufficient "special damages" to

16  sustain its Counterclaim for Trade Libel, alleging that "special damages" consist of pecuniary

17  loss that resulted directly from the effect of the wrongful conduct at issue.  (Pl.'s Mot. to

18  Dismiss, # 35 at 17) (citing Bose Corp v. Consumers Union of U.S., Inc., 529 F. Supp 357,

19  362 (D. Mass. 1981)).  "General, implied, or presumed damages of the kind available in

20  personal defamation actions . . . do not satisfy the requirement of special damages."  53 C.J.S.

21  Libel § 322 (2005).

22

23      Defendants' Counterclaim asserts damages, stating that "[t]he false and disparaging

24  statements made by Shuffle Master and Yoseloff as averred herein have caused pecuniary

25

damage to [Defendants] in an amount to be determined at trial." (Def's Answer, #26 at ¶ 52.)

Defendants' libel allegation asserts that Shuffel Master and Yoseloff made libelous

statements in the form of letters and communications to prospective customers making false

claims regarding Defendants' "Play Four Poker" game.  At this point in the litigation,

Defendants have sufficiently plead their Counterclaim for trade libel.  Therefore, their

seventh counterclaim is dismissed.

### CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motion to Dismiss be *granted* in part and

*denied* in part.  Plaintiffs' Motion to Dismiss is *granted* as to Defendants' first, second, and

fourth Counterclaims and *denied* as to Defendants' third, fifth, and seventh Counterclaims.

Plaintiffs are granted leave to amend the sixth Counterclaim.



DATED this 26th day of September, 2006.

_____

ROBERT C. JONES
UNITED STATES DISTRICT JUDGE