JONES VARGAS
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89109
Telephone: (702) 862-3300
Facsimile:  (702) 737-7705

BARRY F. IRWIN (Bar No. 9068)
JAMI A. GEKAS (JAROSCH)
*(Admitted Pro Hac Vice)*
KIRKLAND & ELLIS, LLP
200 East Randolph Drive
Chicago, Illinois  60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

*Attorneys for Shuffle Master, Inc. and*
*Counter-Defendant Mark Yoseloff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| SHUFFLE MASTER, INC.<br><br>              Plaintiff,<br><br>     v.<br><br>YEHIA AWADA, and GAMING<br>ENTERTAINMENT, INC.<br><br>              Defendants.<br><hr>GAMING ENTERTAINMENT, INC., and<br>YEHIA AWADA,<br><br>         Counterclaim-Plaintiffs,<br><br>     v.<br><br>SHUFFLE MASTER, INC., and MARK<br>YOSELOFF,<br><br>         Counterclaim-Defendants. | CASE NO. CV-S-05-1112-RCJ-RJJ<br><br><br><br>**SHUFFLE MASTER'S MOTION FOR<br>SUMMARY JUDGMENT NO. 1 ON<br>TRADE DRESS INFRINGEMENT** |

NOW COMES Plaintiff/Counter-Defendant Shuffle Master, Inc., and pursuant to Federal Rule of Civil Procedure 56, hereby moves this Court for entry of summary judgment on Count I of the First Amended Complaint for infringement of Shuffle Master's Four Card Poker Trade Dress.

The Four Card Poker Trade Dress is inherently distinctive, non-functional, associated exclusively with Shuffle Master, and thus protectable under Lanham Act Section 43(a).  In addition, the indisputable evidence in this case establishes that there is a likelihood of confusion with the Defendants' revised version of their "Play Four Poker" game that was promoted at the 2005 G2E conference in Las Vegas.

WHEREFORE, for the reasons set forth above and in the accompanying Memorandum of Points and Authorities in Support of Shuffle Master's Motion for Summary Judgment No. 1 on Trade Dress Infringement, Shuffle Master respectfully requests that this Court enter summary judgment in favor of Shuffle Master on Count I of the First Amended Complaint.

/

/

/

/

/

/

/

/

/

-1-

1    Dated:  December 15, 2006                    Respectfully submitted,

2

3                                                 __/s/ Jami A. Gekas (Jarosch)_____
4                                                 JONES VARGAS
                                                  3773 Howard Hughes Parkway
5                                                 Third Floor South
                                                  Las Vegas, Nevada 89109
6                                                 Telephone: (702) 862-3300
                                                  Facsimile:   (702) 737-7705
7

8                                                 BARRY F. IRWIN (Bar No. 9068)
                                                  JAMI A. GEKAS (JAROSCH)
9                                                 *(Admitted Pro Hac Vice)*
                                                  KIRKLAND & ELLIS, LLP
10                                                200 East Randolph Drive
                                                  Chicago, Illinois  60601
11                                                Telephone:  (312) 861-2000
                                                  Facsimile:   (312) 861-2200
12

13                                                *Attorneys for Shuffle Master, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                                  -2-
28

JONES VARGAS
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, Nevada 89109
Telephone: (702) 862-3300
Facsimile:   (702) 737-7705

BARRY F. IRWIN (Bar No. 9068)
JAMI A. GEKAS (JAROSCH)
*(Admitted Pro Hac Vice)*
KIRKLAND & ELLIS, LLP
200 East Randolph Drive
Chicago, Illinois  60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

*Attorneys for Shuffle Master, Inc. and*
*Counter-Defendant Mark Yoseloff*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| SHUFFLE MASTER, INC.<br><br>Plaintiff,<br><br>v.<br><br>YEHIA AWADA, and GAMING ENTERTAINMENT, INC.<br><br>Defendants.<br>_____<br>GAMING ENTERTAINMENT, INC., and YEHIA AWADA,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>SHUFFLE MASTER, INC., and MARK YOSELOFF,<br><br>Counterclaim-Defendants. | CASE NO. CV-S-05-1112-RCJ-RJJ<br><br><br><br><br><br><br><br>**SHUFFLE MASTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT NO. 1 ON TRADE DRESS INFRINGEMENT** |

# TABLE OF CONTENTS

## BACKGROUND

I.    INTRODUCTION AND PROCEDURAL HISTORY.........................................1

II.   FACTUAL BACKGROUND. ....................................................................2

    A.    The Four Card Poker Trade Dress. ............................................. 2

    B.    The Defendants' Copycat Play Four Poker Game. ...................................... 3

    C.    Discovery in this Matter. ......................................................... 4

III.  LEGAL STANDARDS. ..........................................................................5

    A.    Summary Judgment. ............................................................... 5

    B.    Infringement Under Lanham Act § 43(a). ................................. 6

## ARGUMENT

IV.   SUMMARY JUDGMENT IS APPROPRIATE ON INFRINGEMENT OF
      SHUFFLE MASTER'S FOUR CARD POKER TRADE DRESS. ......................7

    A.    The Four Card Poker Trade Dress Is Protectable. ...................... 7

    B.    The Four Card Poker Trade Dress Is Not Functional. ............................. 10

    C.    The Defendants' Table Game Creates A Likelihood Of Confusion......... 11

V.    CONCLUSION. ..................................................................................19

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ................................................................. 12, 17

4

5

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..................................................................................... 5

6

7

*Au-Tomotive Gold, Inc. v. Volkswagen of America*,
    457 F.3d 1062 (9th Cir. 2006) ..................................................................... 6

8

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ............................................................. passim

9

10

*Brother Records, Inc. v. Jardine*,
    318 F. 3d 900 (9th Cir. 2003) ....................................................................... 6

11

12

*Caesars World, Inc. v. Milanian*,
    247 F. Supp. 2d 1171 (D. Nev. 2003) ................................................... 15, 18

13

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
    251 F.3d 1252 (9th Cir. 2001) .................................................... 7, 10, 11, 12

14

15

*Entrepreneur Media, Inc. v. Smith*,
    101 Fed. Appx. 212 (9th Cir. 2004) .............................................................. 6

16

17

*First Brands Corp. v. Fred Meyer, Inc.*,
    809 F.2d 1378 (9th Cir. 1987) ................................................................. 12, 16

18

*General Motors Corp. v. Let's Make A Deal*,
    223 F. Supp. 2d 1183 (D. Nev. 2002) .......................................... 7, 8, 10, 17

19

20

*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) ............................................................... 13, 14

21

22

Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.,
    4 F.3d 819 (9th Cir. 1993) ....................................................................... 6, 7

23

*Le Sportsac, Inc. v. K Mart Corp.*,
    754 F.2d 71 (2d Cir.1985) ........................................................................... 7

24

25

*Lindy Pen Corp. v. Bic Pen Corp.*,
    796 F.2d 254 (9th Cir. 1986) ..................................................................... 14

26

*Locomotor USA, Inc. v. Korus Co., Inc.*,

27

28

46 F.3d 1142, 1995 WL 7489 (9th Cir. Jan. 6, 1995) ................................................... 8

*Nissan Motor Co. v. Nissan Computer Corp.*,
   378 F.3d 1002 (9th Cir. 2004) ................................................................................. 6

*Pacific Telesis Group v. Int'l Telesis Commc'ns*,
   994 F.2d 1364 (9th Cir. 1993) ................................................................................ 17

*Sunburst Products, Inc. v. Derrick Law Co., Ltd.*,
   No. 89-56025, 1991 WL 1523 (9th. Cir. 1991) ........................................................ 8

*The Morningside Group Ltd. v. Morningside Capital Group, LLC*,
   182 F.3d 133 (2nd Cir. 1999) ................................................................................. 17

*Thomas & Betts Corp. v. Panduit Corp.*,
   138 F.3d 277 (7th Cir. 1998) ................................................................................... 9

*Toshiba America Info. Sys., Inc. v. Advantage Telecom, Inc.*,
   19 Fed. Appx. 646 (9th Cir. 2001) ........................................................................... 6

*Vision Sports, Inc. v. Melville Corp.*,
   888 F.2d 609 (9th Cir. 1989) ........................................................................... 12, 16

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*
   529 U.S. 205 (2000) ................................................................................................. 7

**Statutes**

15 U.S.C. § 1125(a) ..................................................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 56(c) .................................................................................................... 5

**BACKGROUND**

## I.   INTRODUCTION AND PROCEDURAL HISTORY.

Plaintiff Shuffle Master, Inc. ("Shuffle Master") is an undisputed innovator and leader in the field of specialty casino table games.  In early September, 2005, at the G2E Gaming Convention at the Las Vegas Convention Center, Defendant Yehia Awada ("Awada") and his corporate alter-ego, Defendant Gaming Entertainment, Inc. ("GEI")— direct competitors of Shuffle Master in the casino table game industry—unveiled a "new and improved" version of their Play Four Poker game that was nothing more than a blatant copy of one of Shuffle Master's most popular games, Four Card Poker.

Upon motion by Shuffle Master, this Court entered a temporary restraining order ("TRO") on September 14, 2005, temporarily enjoining Awada and GEI (together the "Defendants") from copying Shuffle Master's trade dress in the overall appearance of Four Card Poker.  Upon further motion by Shuffle Master, this Court later entered a preliminary injunction ("PI") on August 31, 2006 in Shuffle Master's favor, finding Shuffle Master likely to succeed on the merits of its claims.  (*See* Docket No. 94, Order on Mot. for Prelim. Inj. (referred to herein as "PI Order").)

As Shuffle Master explains below, this Court's finding that Shuffle Master is likely to succeed on the merits of its Lanham Act claim was no mistake.  Indeed, basic principals of trademark law as applied to the facts of this case demonstrate that summary judgment in Shuffle Master's favor on Count I of the First Amended Complaint is now appropriate.

## II.      FACTUAL BACKGROUND.[1]

### A.      The Four Card Poker Trade Dress.

Four Card Poker debuted in January of 2002.  (LR 56-1 Stmt. at ¶ 1.)   The "game" is actually a felt overlay that is placed atop a standard semi-circular casino gaming table.  (*Id.*)  During play, the dealer stands behind the straight edge of the semi-circle, and the players sit along its circumference.  (*Id.*)  The game begins with each player making an initial "ante" bet; the players also have the option to add a side bet, for which Shuffle Master has coined the trademark ACES UP.  (*Id.*)  Five cards are then dealt to each player, and once a player obtains his cards, if he wants to continue play against the dealer, he must add a second bet, which may be in an amount between one to three times the ante.  (*Id.*)  The object of the game is to make the best four-card hand out of five cards.  (*Id.*)  These game play rules and the "Aces Up" side bet option for Four Card Poker have remained exactly the same since the inception of the game.

The Four Card Poker felt design includes a number of distinctive visual features, including (1) the placement of three circles, arranged vertically, representing the location to place the various bets, at each player station; (2) the font within the three circles at each player station; (3) the printing of the names of the bets within the three circles at each player station, so that the letters of "Aces Up" and "Play 1x to 3x Ante" touch the outer edges of the circles; (4) the identification of the bets, as "Aces Up," "Ante," and "Play 1x to 3x Ante" at each player station; (5) the placement of the pay tables at each

---

[1]   Shuffle Master relies primarily on the separate Local Rule 56-1 Statement of Undisputed Facts (herein cited as "LR 56-1 Stmt. at ¶ __"), filed herewith, and sets forth additional facts only as necessary to provide the Court with the context of arguments set forth below.

player station beneath the vertically arranged circles; (6) the font of the ACES UP trademark at each player station; (7) the number of dots (eighteen) below the ACES UP trademark at each player station; (8) the font of the "Automatic Bonus" heading at the pay table for each player station; (9) the number of dots (eighteen) below "Automatic Bonus" at each player station; and (10) the font and wording of the text below the pay table at each player station ("Automatic Bonuses paid on Ante wager").  (*Id*. ¶ 2.)

The overall appearance of these individual design components in combination—which is in no way dictated by the rules of play—makes up the "Four Card Poker Trade Dress."   There are numerous alternate table game felt designs on the market.  However, with the exception of the Revised Awada Game, Shuffle Master is aware of no table game felt designs that look just like the Four Card Poker Trade Dress.  (*Id*. ¶ 16.)

Notwithstanding the competitive nature of the casino industry, the Four Card Poker table game is and has been overwhelmingly popular.  (*See id*. ¶¶ 4-5.)  This is no doubt due not only to the exciting and innovative nature of the game, but also to Shuffle Master's extensive promotion of the game.  (*See id*. ¶¶ 6-7.)  This Court has determined that Shuffle Master has "gone to great lengths to advertise and promote its Four Card Poker trade dress."  (PI Order at 5.)  It is indisputable that Shuffle Master's Four Card Poker marketing and promotion has resulted in significant expenditures of time and money.  (*See*, *e.g.*, LR 56-1 Stmt. ¶¶ 6-7.)

**B.   The Defendants' Copycat Play Four Poker Game.**

Like Shuffle Master, Defendants are in the business of developing and marketing specialty table games.  (*Id*. ¶ 10.)  In 2002, Defendants began distributing a table game known as "Play Four Poker" (the "Original Awada Game").  (*Id*. ¶ 11.)  Any similarity

-3-

between the play of the Original Awada Game and Shuffle Master's Four Card Poker table game began and ended with the fact that both games involved bets based on a four card hand of poker. The Original Awada Game had very different rules of play and a very different overall appearance from Shuffle Master's Four Card Poker. (*Id.*) Then, in August 2005 Defendants suddenly and significantly revised their Play Four Poker game (the "Revised Awada Game"), such that both its rules of play and its table appearance became ***identical*** to Shuffle Master's Four Card Poker. (*Id.* ¶ 12.)

The only plausible explanation for the change to the Original Awada Game is that Defendants intended to capitalize on the popularity and success earned by Shuffle Master's Four Card Poker over the previous four years. Hoping to siphon casino business away from Shuffle Master, Defendants touted the Revised Awada Game as a cheaper version of Shuffle Master's Four Card Poker—at the G2E Convention, Defendants displayed promotional materials asking "WHY PAY MORE?" and touted that their game was approximately one-third the price of Shuffle Master's. (*Id.* ¶ 13.)

Defendants do not need to imitate the Four Card Poker Trade Dress. As an initial matter, Defendants sold a Play Four Poker game for years without using the Four Card Poker Trade Dress. (*Id.* ¶ 11.) Moreover, immediately upon entry of this Court's TRO, Defendants appeared at the G2E with a table felt for Play Four Poker that did not appropriate the Four Card Poker Trade Dress. (*Id.* ¶ 15.)

### C.   Discovery in this Matter.

Since December of 2005, Defendants have conducted absolutely no discovery related to their defense against Shuffle Master's claims in this matter. Defendants failed to propound a single additional interrogatory or written discovery request upon Shuffle

Master after their first limited sets of written discovery served in late 2005, to which Shuffle Master responded in January 2006.  (*Id.* ¶ 23.)  Nor did Defendants notice or take a single deposition of any of the individuals identified in Shuffle Master's initial disclosures, or any of the declarants or affiants who submitted papers in support of Shuffle Master's two separate motions for injunctive relief.  (*Id.* ¶ 24.)  Defendants have retained no experts—survey, damages, or otherwise.  (*Id.* ¶ 25.)  Furthermore, while Shuffle Master *has* retained a survey expert to demonstrate secondary meaning in its Four Card Poker Trade Dress, Defendants conducted no discovery on, and sought no deposition of, that individual.  (*Id.* ¶ 25-26.)

## III.     LEGAL STANDARDS.

### A.     Summary Judgment.

The standard for granting summary judgment is well established: if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, then the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A material factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.  "[T]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.

-5-

Despite the fact-intensive nature of a trademark or trade dress infringement analysis, Lanham Act cases are nonetheless appropriate for summary judgment in many instances.  When the "evidence is clear and tilts heavily in favor" of infringement, the 9th Circuit has "not hesitated to affirm summary judgment" in favor of the trademark or trade dress owner.  *See Au-Tomotive Gold, Inc. v. Volkswagen of America,* 457 F.3d 1062, 1075 (9th Cir. 2006) (citing *Nissan Motor Co. v. Nissan Computer Corp.,* 378 F.3d 1002, 1019 (9th Cir. 2004) (affirming summary judgment where the marks were "legally identical," the goods at issue were related, and the marketing channels overlapped)) (concluding as a matter of law that likelihood of confusion was clear); *see also Brother Records, Inc. v. Jardine*, 318 F. 3d 900, 910 (9th Cir. 2003) (affirming summary judgment of infringement in favor of trademark holder); *Entrepreneur Media, Inc. v. Smith*, 101 Fed. Appx. 212, 214 (9th Cir. 2004) (affirming district court "determination of likelihood of confusion based on the totality of the circumstances"); *Toshiba America Info. Sys., Inc. v. Advantage Telecom, Inc.*, 19 Fed. Appx. 646 (9th Cir. 2001) (affirming partial summary judgment on trademark infringement claim and entry of permanent injunction against trademark defendant).

**B.**     **Infringement Under Lanham Act § 43(a).**

Under the Lanham Act, trade dress "involves the total image of a product and may include features such as size, shape, color, texture or graphics."  *See Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819, 822 (9th Cir. 1993) (citing *Vision Sports, Inc. v. Melville Corp*., 888 F.2d 609, 613 (9th Cir. 1989)).  "A seller's adoption of a trademark or trade dress that is confusingly similar to a competitor's constitutes unfair competition and is actionable under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)."  *Int'l*

1    *Jensen*, 4 F.3d at 822, (citing *Le Sportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 75 (2d

2    Cir.1985)).

3                                    **ARGUMENT**

4    **IV.   SUMMARY JUDGMENT IS APPROPRIATE ON INFRINGEMENT OF**
5         **SHUFFLE MASTER'S FOUR CARD POKER TRADE DRESS.**

6         Shuffle Master claims that Defendants' Revised Awada Game infringes its trade

7    dress in the inherently distinctive overall appearance of the Four Card Poker table game

8    felt.  To prevail under Lanham Act § 43(a), Shuffle Master must prove three things: that

9    the Four Card Poker Trade Dress is (1) protectable, (2) nonfunctional, and (3) likely to be

10

11   confused with the Revised Awada Game by members of the consuming public.  *See*

12   *General Motors Corp. v. Let's Make A Deal*, 223 F. Supp. 2d 1183, 1195 (D. Nev. 2002);

13   *see also Clicks Billiards, Inc. v. Sixshooters, Inc*., 251 F.3d 1252, 1258 (9th Cir. 2001).

14   Each will be addressed in turn.

15        **A.    The Four Card Poker Trade Dress Is Protectable.**

16

17        "Trade dress is protected if it is inherently distinctive or has acquired secondary

18   meaning."[2]  *General Motors*, 223 F. Supp. 2d at 1195.  This Court has already

19   determined that Shuffle Master's "trade dress appears inherently distinctive when

20   considering all of the elements together."  (PI Order at 3-4; *c.f.* Docket No. 42 (Shuffle

21   Master's PI Motion) at 10-11.)

22

23   _____

24   [2]   If trade dress is claimed in a product design, as opposed to product packaging, it will only be
         protected upon a showing of secondary meaning.  *Wal-Mart Stores, Inc. v. Samara Bros.*, 529
25   U.S. 205, 216 (2000).   This Court has already considered—and rejected—Defendants'
         arguments that the Four Card Poker Trade Dress is a product configuration trade dress,
26   instead noting that it is "inclined to agree" with Shuffle Master that the claimed trade dress
         here is a packaging trade dress.  (PI Order at 4; *c.f.* Docket 42 at n.1 and cases cited therein.)

27

28                                       -7-

Even if the Four Card Poker Trade Dress was not inherently distinctive, it would still be protectable because it has achieved secondary meaning.  Trade dress has secondary meaning "if the purchasing public associates it with a specific producer or source rather than with merely the product."  *General Motors*, 223 F. Supp. 2d at 1195.  The Ninth Circuit has identified several factors this Court may look to in evaluating secondary meaning in the Four Card Poker Trade Dress, including:  (1) the length and manner of Shuffle Master's use of the Four Card Poker Trade Dress; (2) the exclusivity of that use; (3) the degree and manner of Shuffle Master's Four Card Poker advertising; (4) evidence of sales of Four Card Poker;  and (5) Defendant's intent to copy.  *General Motors*, 223 F. Supp. 2d at 1195; *c.f. Sunburst Products, Inc. v. Derrick Law Co., Ltd.*, No. 89-56025, 1991 WL 1523, at *3 (9th. Cir. 1991) (unpublished).  A final and extremely important factor is whether actual purchasers associate the Four Card Poker Trade Dress with Shuffle Master.  *Id.*; *see also Locomotor USA, Inc. v. Korus Co., Inc.*, 46 F.3d 1142, 1995 WL 7489, *7 (9th Cir. Jan. 6, 1995) (unpublished) (consumer surveys are "the most persuasive evidence of secondary meaning" in a trade dress infringement suit).

With respect to the first factor (length of use), Shuffle Master has used the Four Card Poker Trade Dress continuously and exclusively for nearly five years.  (LR 56-1 Stmt. ¶ 8.)  Upon a consideration of the remaining four factors in connection with Shuffle Master's Motion for Preliminary Injunction, this Court expressly found that:

> Shuffle Master has provided evidence demonstrating that in spite of the large number of gaming tables in the market, none have shared the appearance of Shuffle Master's Four Card Poker game until the alleged infringement.  Plaintiff has also shown that they have gone to great lengths to advertise and promote its Four Card Poker trade dress, and have made significant sales in the gaming

-8-

market.  Defendants' intent to copy may be inferred from evidence demonstrating that they had their own version of a four card poker game table felt design for years before switching to the subject design of this case, which is strikingly similar to Plaintiff's table felt design.

Additionally persuasive is Shuffle Master's evidence in the form of a survey of table game managers from a cross-section of casinos in the United States indicating that 30% of individuals interviewed associated Shuffle Master's Four Card Poker Game with a single source.

(*See* PI Order at 4-5 (internal citations omitted); *see also* Docket No. 42 (Shuffle Master's PI Motion) at pages 11-14 and cases and exhibits cited therein.)[3]

Thus, in granting Shuffle Master's Motion for Preliminary Injunction and finding Shuffle Master likely to succeed on the merits of its trade dress infringement claim, this Court found that application of the Ninth Circuit's secondary meaning factors indisputably shows that Shuffle Master has acquired, as well as inherent, distinctiveness in its trade dress.

During the months between briefing and argument on Shuffle Master's Motion for Preliminary Injunction and the close of discovery, Defendants identified no additional evidence sufficient to create a genuine issue of material fact as to the distinctiveness

---

[3]   In addition to evidence of exclusivity, sales, and marketing of Four Card Poker, Shuffle Master submitted a survey conducted by noted expert Henry D. Ostberg of Admar Group Inc. (LR 56-1 Stmt. ¶ 26.)  Ostberg surveyed table game managers (*i.e.*, casino personnel responsible for leasing table games) from a cross-section of casinos in the United States, and found that 35% associated the Four Card Poker Game with a single source, Shuffle Master. (*Id.*)  Such a percentage of recognition is well within the level of association courts have found to be probative evidence of secondary meaning.  *See*, *e.g.*, *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 295 (7th Cir. 1998) (a recognition rate of 30% was sufficient for purpose of staving off a summary judgment of no secondary meaning).  Ostberg's declaration, with its accompanying appendices, was attached as Exhibit F to Shuffle Master's Motion for Preliminary Injunction, and is available at Docket Nos. 54-56.

(whether inherent or acquired) of the Four Card Poker Trade Dress.  Therefore, as a matter of law, Shuffle Master's Four Card Poker Trade Dress is protectable.

**B.      The Four Card Poker Trade Dress Is Not Functional.**

Trade dress is functional when the design of the dress "is essential to the use or purpose of the article," if the design "affects the cost or quality of the article," or if exclusive use of the dress by one party would "put competitors at a significant, non-reputation-related disadvantage."  *Clicks*, 251 F.3d at 1262.  In contrast, trade dress is ***non-functional*** if it is a composite of features that are "arbitrarily affixed or included for aesthetic purposes."  *General Motors*, 223 F. Supp. 2d at 1196.  In evaluating functionality, the Ninth Circuit has emphasized that it is "crucial" that courts "focus not on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create."  *Clicks*, 251 F.3d at 1259, n.2.  As such, the Ninth Circuit has identified four factors to consider in determining whether trade dress is functional:  (1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture."  *Id*. at 1260 (internal quotations omitted).

In its Motion for Preliminary Injunction, Shuffle Master explained in detail why consideration of each of these four factors leads to the inescapable conclusion that the Four Card Poker Trade Dress is not functional.  (*See* Docket No. 42 at pp. 14-16, and Exhibits cited therein.)  In responding to Shuffle Master's Motion, Defendants effectively conceded the third and fourth factors, *i.e*., that Shuffle Master's advertising does not tout

-10-

utilitarian features of the Four Card Poker Trade Dress, and that the Four Card Poker design is not any easier or cheaper to make than any other felt design.  (Docket No. 64-1, Opp'n of Defs. and Countercl.-Pls. to Mot. for Prelim. Inj.)  Defendants argued instead that the Four Card Poker Trade Dress is "*de jure*" functional because it is "essential to the use or purpose of the product itself."  (*Id*. at 8.)

After considering the parties' arguments on functionality, this Court concluded that "the rules of play for the Four Card Poker game do not necessitate the particular trade dress at issue here."  (*See* PI Order at 7.)  In other words, this Court found that:

> Shuffle Master has demonstrated… that its design is not *de jure* functional, as Defendants existed in the market with their own version of four card poker for several years using a table design that was different in appearance than Shuffle Master's.  It is this very fact that proves that Shuffle Master's trade dress yields no utilitarian advantages.  Not only did Defendants market a table design different than Shuffle Master's prior to changing to the design at issue here, but following the Court's issuance of the TRO Defendants came forward with  yet another design that did not mirror Shuffle Master's. (Def.'s Mot. Ex. 1 at 3-5.)
>
> Therefore, Plaintiff has sufficiently demonstrated that its table design, or trade dress for Four Card Poker is non-functional.

(*Id*.)

Again, in the months since briefing on Shuffle Master's Motion, Defendants have identified no new evidence that would bear on the Court's initial finding of non-functionality.  Thus there is no genuine issue of material fact here—as the Court has already determined, Shuffle Master's Four Card Poker Trade Dress is non-functional as a matter of law.

### C.   The Defendants' Table Game Creates A Likelihood Of Confusion.

Likelihood of confusion is the "most important element" of the three components of a protectable trade dress.  *Clicks*, 251 F.3d at 1264.  A likelihood of confusion exists

when the similarity of the parties' dress is likely to confuse customers about the source of the products. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999). In other words, confusion is likely here if those viewing Defendants' accused Play Four Poker trade dress will probably assume that the Revised Awada Game is somehow associated with Shuffle Master. *Clicks*, 251 F.3d at 1265. In evaluating whether there is a likelihood of confusion, courts must look to the "total image of a product," *Vision Sports*, 888 F.2d at 613—*i.e.*, the "total effect of the defendant's product and package on the eye and mind of an ordinary purchaser." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir. 1987).

Analysis of likelihood of confusion in a Lanham Act trade dress infringement case involves consideration of several factors, often referred to in the Ninth Circuit as the "Sleekcraft factors": (1) similarity of the parties' trade dress; (2) similarity of the parties' goods and services; (3) marketing channels used; (4) the alleged infringer's intent in selecting the accused trade dress; (5) strength of the protected trade dress; (6) the type of goods and degree of care exercised by purchasers; (7) evidence of actual confusion; and (8) likelihood of expansion of the product lines. *See Brookfield*, 174 F.3d at 1054 (referring to eight "Sleekcraft factors" and granting preliminary injunction); *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (identifying factors in trademark infringement context); *Vision Sport*, 888 F.2d at 616 (holding that same factors are to considered in trade dress infringement case). The consideration of these factors demonstrates that Defendants' trade dress creates a likelihood of confusion as a matter of law.

-12-

### 1.   Defendants' Infringing Trade Dress is Virtually Identical to Shuffle Master's.

Certain of the Sleekcraft factors are "much more important than others," and the similarity of the parties' trade dress "will always be an important factor."  *Brookfield*, 174 F.3d at 1054.  This Court has already determined that the "Defendants' trade dress is virtually identical to Shuffle Master's," as a simple visual comparison of the parties' games shows.  (PI Order at 8; *see also* LR 56-1 Stmt. ¶ 12.)  In addition, Defendant Awada admitted at his October 2006 deposition that element for element, the design of the Revised Awada Game is "just like" the Four Card Poker Trade Dress.  (LR 56-1 Stmt. ¶ 17.)

It is indisputable that the only difference between the Revised Awada Game and Shuffle Master's Four Card Poker Game is the odds for "3 of a kind"—8-to-1 vs. 7-to-1. (*Id*. ¶ 18.) The law is clear that such "trivial distinctions" are unimportant when two products are otherwise "glaringly similar."  *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000).  Furthermore, when considering this Sleekcraft factor, similarities are always weighed more heavily than differences.  *Id*.  Thus, this first factor weighs strongly in favor of Shuffle Master.

### 2.   The Parties' Goods and Services are Identical.

This factor, which seeks to determine whether the parties directly compete, is another Sleekcraft factor that is "always" important.  *Brookfield*, 174 F.3d at 1054-55.  The law recognizes that competitive, related goods and services are more likely than unrelated goods to confuse the public.  *Id*. at 1055; *AMF*, 599 F.2d at 350.  For this reason, the Ninth Circuit has held that when virtually identical trade dress is used in

connection with identical products or services, "likelihood of confusion [will] follow as a matter of course." *Brookfield*, 174 F.3d at 1056 (emphasis added) (citing *Lindy Pen Corp. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986)) (finding likely confusion based solely on similarity of the marks and products, even though the six other likelihood of confusion factors all weighed against a finding of likelihood of confusion).

In this case, the parties have admitted that they are direct market competitors, which this Court relied upon in determining that "the goods and services offered by the two products are identical." (PI Order at 8; *see also* LR 56-1 Stmt. ¶ 10.) Also persuasive is the fact that Defendants made at least four known attempts to persuade Shuffle Master's customers to switch from Four Card Poker to the Revised Awada Game. (LR 56-1 Stmt. ¶ 14.) Defendants have even offered their game as a cheap replacement for Shuffle Master's game, including by advertising it with the slogan "Why Pay More? Same Rules As Our Competitor's 4 Card Poker Game $300!!!." (*Id.* ¶ 13.) Thus, this factor supports a likelihood of confusion.

### 3. The Parties Use Identical Marketing Channels.

This factor, together with relatedness of goods and services and similarity of the trade dress, make up "the controlling troika" or "most crucial body of the Sleekcraft analysis." *GoTo.com*, 202 F.3d at 1205, 1207. Although Defendants have no marketing plan, they have admitted that they intend to "market the game anywhere that there is casino table gaming." (LR 56-1 Stmt. ¶ 20.) Indeed, this Court has already determined that "the parties have similar marketing channels, as evidenced by both parties' presence at the Las Vegas G2E Gaming convention, and Defendants' contention that Plaintiffs' actions in this case are intended to 'intimidate GEI's customers.'" (PI Order at 8 (citing

-14-

Defs.' Opp. to PI at 2).)   Thus, this factor again weighs heavily in favor of Shuffle Master.

### 4. Defendants Intended Their Play Four Poker Game to Be Associated or Confused with Four Card Poker.

If an accused infringer knowingly adopts a mark similar to another's, "courts will presume that it can achieve its purpose in deceiving the public." *Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1200 (D. Nev. 2003) (citing Sleekcraft, 599 F.2d at 354) (emphasis added).  To swing this factor its way, Shuffle Master is not required to show bad acts by Defendants; it need merely establish that the Defendants adopted a similar trade dress with actual or constructive knowledge of Shuffle Master's Four Card Poker Trade Dress.  *Brookfield*, 174 F.3d at 1059.

This Court has already determined that "Defendants intended their trade dress to be associated with Shuffle Master's Four Card Poker game," inferring from Shuffle Master's evidence of its strong reputation in the industry that Defendants were aware of the Four Card Poker Trade Dress when choosing their virtually identical table game design.  (PI Order at 8-9.)  Nonetheless, since the Court issued its PI Order, Defendant Awada confirmed at his deposition that he had actual knowledge of Shuffle Master's game:

> **Q**    Okay.  And you were aware that the players were used to Shuffle Master's [Four Card Poker] game and it being played that way; correct?
>
> **A**    Well, I'm aware of the game out there, yes.
>
> **Q**    And you were aware of the game out there before you decided to make those changes?
>
> **A**    Yes, I'm aware of the game out there.

-15-

(Gekas Decl. ¶ 6; *see also id*. ¶ 7 (testimony from Defendant Awada that he was familiar with Shuffle Master's Four Card Poker Game throughout 2004 and 2005).)

"A showing that defendant intended to copy plaintiff's trade dress is entitled to substantial weight." *Vision Sports*, 888 F.2d at 616. Thus, if similar trade dress is adopted with the intent of deriving "benefit from the reputation of the plaintiff, that fact alone may be sufficient to justify the inference that there is confusing similarity." *First Brands*, 809 F.2d at 1385 (defendant's intent in adopting trade dress is a "critical factor"). Because the Defendants acted with intent that the public would replace Shuffle Master's Four Card Poker with the Revised Awada Game, this factor by itself is probably enough to establish a likelihood of confusion. *Id*. When viewed in tandem with the three previously-discussed Sleekcraft factors, a likelihood of consumer confusion is inescapable. Thus, this factor also weighs in favor of Shuffle Master.

### 5. Shuffle Master Has a Strong Trade Dress.

When the products at issue are closely related and the accused trade dress is nearly identical, as here, the strength of the Plaintiff's trade dress is "of diminished importance in the likelihood of confusion analysis." *Brookfield*, 174 F.3d at 1058-59. Nevertheless, Shuffle Master has introduced credible evidence that its Four Card Poker Trade Dress is strong and distinctive, which this Court found persuasive in determining that consumer confusion is likely. (*See* PI Order at 9 ("the survey conducted by Shuffle Master implies that Shuffle Master's table design is a strong trade dress"); *see also* Ex. A, TRO Snow Aff. ¶¶ 18-19 (noting reputation of game, revenue produced by it, and marketing expenses incurred in promoting it).) Thus, this factor again weighs in favor of Shuffle Master.

1

6.      **Degree of Care.**

2

When assessing the likelihood of confusion, the standard used by the courts is that

3

of the "typical buyer exercising ordinary caution."  *AMF*, 599 F.2d at 353.  While the

4

average purchaser of a product is expected to be "more discerning—and less easily

5

confused—when he is purchasing expensive items," the Ninth Circuit has recognized that

6

"confusion may often be likely even in the case of expensive goods sold to discerning

7

customers."  *Brookfield*, 174 F.3d at 1060.  Indeed, the degree of care factor is

8

overshadowed where, as here, other factors weigh strongly in favor of a likelihood of

9

confusion.  *See, e.g., Pacific Telesis Group v. Int'l Telesis Commc'n*, 994 F.2d 1364,

10

1369 (9th Cir. 1993) (degree of care unimportant where "considered as a unity, the

11

constellation of facts found by the district court coheres in the ultimate factual finding of

12

likelihood of confusion"); *The Morningside Group Ltd. v. Morningside Capital Group,*

13

*LLC*, 182 F.3d 133, 143 (2nd Cir. 1999) ("[i]t is clear in all events that when, as here,

14

there is a high degree of similarity between the parties' services and marks, 'the

15

sophistication of the buyers cannot be relied on to prevent confusion'") (internal citations

16

omitted).  Thus, this factor weighs slightly in favor of Shuffle Master.

17

18

7.      **Actual Confusion and Likelihood of Expansion Are Not**
        **Relevant Here.**

19

20

The last two Sleekcraft factors do not merit extensive discussion because they are

21

irrelevant to this case.  *General Motors*, 223 F. Supp. 2d at 1194 (finding these factors

22

"minor considerations").  First, actual confusion is not relevant here because Shuffle

23

Master promptly brought this suit as soon as the Defendants introduced their infringing

24

Four Card Poker game into the market.  (LR 56-1 Stmt. ¶ 15.)  *See Brookfield*, 174 F.3d

25

26

27

28

-17-

1   at 1060 (finding actual confusion irrelevant under similar circumstances); *see also*

2   *Caesars*, 247 F. Supp. 2d at 1199 (noting that a requirement of actual confusion "where

3   there has been insignificant commercial activity by the infringer would work to penalize

4   the trademark owner for taking prompt steps to protect his/her rights").  Second, the

5   "likelihood of expansion in product lines factor is relatively unimportant where two

6   companies already compete to a significant extent." *Brookfield*, 174 F.3d at 1060.

7

8                                        *   *   *

9         As this Court already determined upon consideration of Shuffle Master's Motion

10  for Preliminary Injunction last spring, applying the facts of this case to each of the

11  Sleekcraft factors relevant here establishes that there is a likelihood of confusion.

12  Defendants have admitted that the parties' goods and services and marketing channels are

13  identical.   In addition, Shuffle Master has submitted credible evidence sufficient to

14  persuade this Court that the parties' game layouts are nearly identical, that Defendants

15  intended to copy the Four Card Poker Trade Dress, and that the Four Card Poker Trade

16  Dress is strong and associated exclusively with Shuffle Master.  In the months following

17  briefing on Shuffle Master's Preliminary Injunction Motion and prior to the close of

18  discovery, Defendants identified no additional evidence that would create a genuine issue

19  of material fact on any of these points; if anything, Shuffle Master's deposition of

20  Defendant Awada merely confirmed a likelihood of confusion.

21

22        Because there is no genuine issue of material fact sufficient to refute this Court's

23  prior conclusions that the Four Card Poker Trade Dress is protectable, non-functional,

24  and that there is a likelihood of confusion with the Revised Awada Game, Shuffle Master

25  is entitled to judgment as a matter of law on Count I of the First Amended Complaint.

26

27                                       -18-

28

1   **V.      CONCLUSION.**

2         As demonstrated above, summary judgment in Shuffle Master's favor on its

3   Lanham Act infringement claims is proper for three reasons.  **First,** the Four Card Poker

4   Trade Dress is protectable under the Lanham Act.  **Second,** the Four Card Poker Trade

5   Dress is not functional.   **Third,** the undisputed evidence in this case leads to the

6   inescapable conclusion that there is a likelihood of confusion.  For the foregoing reasons,

7   Shuffle Master respectfully requests this Court grant summary judgment in favor of

8   Shuffle Master on Count I of the First Amended Complaint.

9

10                                              *     *     *

11   Dated:  December 15, 2006                       Respectfully submitted,

12

13

14                                                    /s/ Jami A. Gekas (Jarosch)
                                                  JONES VARGAS
15                                                3773 Howard Hughes Parkway
                                                  Third Floor South
16                                                Las Vegas, Nevada 89109
                                                  Telephone: (702) 862-3300
17                                                Facsimile:  (702) 737-7705

18
                                                  BARRY F. IRWIN (Bar No. 9068)
19                                                JAMI A. GEKAS (JAROSCH)
                                                  *(Admitted Pro Hac Vice)*
20                                                KIRKLAND & ELLIS, LLP
                                                  200 East Randolph Drive
21                                                Chicago, Illinois  60601
                                                  Telephone:  (312) 861-2000
22                                                Facsimile:  (312) 861-2200

23
                                                  *Attorneys for Shuffle Master, Inc.*
24

25

26

27
                                              -19-
28

1

<u>**CERTIFICATE OF SERVICE**</u>

2

       I HEREBY CERTIFY that on this 15th day of December, 2006, true and

3

correct copies of the foregoing, **SHUFFLE MASTER'S MOTION FOR SUMMARY**

4

**JUDGMENT NO. 1 ON TRADE DRESS INFRINGEMENT** and **SHUFFLE**

5

**MASTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

6

**OF ITS MOTION FOR SUMMARY JUDGMENT NO. 1 ON TRADE DRESS**

7

**INFRINGEMENT**, were served via the Court's ECF notice:

8

9

10

Sheri Schwartz, Esq.

11

LEWIS BRISBOIS BISGAARD & SMITH LLP
400 S Fourth St, Ste 1200

12

Las Vegas, NV  89101
(702) 893-3383 (t)

13

(702) 893-3789 (f)

14

15

   __/s/ Jami A. Gekas (Jarosch)_____

16

An employee of Kirkland & Ellis
LLP

17

18

19

20

21

22

23

24

25

26

27

28